THE PEOPLE, on the relation of THE ALBANY AND SUSQUE-HANNA RAILROAD COMPANY, Respondent, *v.* PETER H. MITCHELL and others, Commissioners, Appellants.

A county or other municipal corporation has no inherent right of legislation, and cannot subscribe for stock in a public improvement unless authorized to do so by the legislature.

The legislature of a State, unless restrained by the organic law, can authorize a county or other municipal corporation to take stock in a railroad or other public improvement; to borrow money to pay for the same; and to levy a tax to repay the loan.

This authority can be conferred in such a manner as to accomplish the purpose, either with or without a popular vote.

When the legislature have the power to authorize the act, it can, by retrospective legislation, cure the evils arising from an irregular execution of such power.

The acts of 1863 and 1864 made the affidavits on file conclusive evidence of the authority and duty of the commissioners to issue town bonds, to the amounts specified, for subscriptions to stock of the Albany and Susquehanna Railroad Company.

APPEAL from the affirmance by the Supreme Court, at a General Term, held in the third judicial district, of an order at the Schoharie Special Term, awarding a peremptory mandamus against the defendants, directing them to subscribe, in behalf of the town of Summit, for $25,000 of the stock of the Albany and Susquehanna Railroad Company, and to issue bonds therefor, as prescribed by law.

The material facts, essential to show the obligation and refusal of the defendants to make the subscription and issue the bonds, were alleged in the affidavits on which the motion was founded, and were met by no substantial denial, though some question was made in regard to them, founded on information and belief, and some collateral facts were alleged, which sufficiently appear in the opinion of the court.

The case, as heard, in the Supreme Court, is reported in 45 Barbour, 208; the opinion in that court being delivered by Mr. Justice MILLER.

*Amasa J. Parker,* for the appellants.

*Henry Smith,* for the respondent.

PORTER, J.   The principles settled in the recent and unanimous judgment of the Supreme Court of the United States, in the case of *Thompson* v. *Lee County*, would be decisive in favor of the relators, irrespective of other considerations equally fatal to the defendants. (3 Wallace, 327.)

The following are two of the propositions affirmed in that decision : 1. " A county, or other municipal corporation, has no inherent right. of legislation, and cannot subscribe for stock in a public improvement, unless authorized to do so by the legislature.   But the legislature of a State, unless restrained by the · organic law, has a right to authorize a municipal corporation to take stock in a railroad or ·other work of internal improvement, to borrow money to pay for it, and to levy a tax to repay the loan ; and this authority can be conferred in such a manner, that the objects can be attained either with or without a popular vote."   2. " If the legislature possess the power to authorize an act to be done, it can, by a retrospective act, cure the evils which existed, because the power thus conferred has . been irregularly executed."

The precise purpose and effect of the confirmatory legislation, of which the defendants complain, was to cure all such defects as those, on which they rely to justify them in disobeying the statute. (Laws of 1863, 30 ; Laws of 1864, 9.)   It was within the scope of legislative authority to modify the limitations and restrictions in the antecedent acts on this subject, to prescribe rules of evidence to govern official action, to dispense with prior conditions, and to charge the commissioners with defined and imperative duties. · Our clear conclusion is, that it was the intention of the confirmatory acts to make the affidavits of consent, then on file in the clerks' offices of the respective towns and counties, however defective in form or substance, " valid and conclusive proof, in all courts and for all purposes, to authorize and uphold the respective subscriptions to the stock, and the issue of bonds to the amount specified in such proof for such towns respectively."   This purpose is apparent from the further provisions, that no defects " in any of such affidavits shall invalidate such

proof," and that "the bonds shall be valid and binding on said town, without reference to the form or sufficiency of such affidavits." (Laws of 1864, 911.) The commissioners were not left at liberty either to go behind the affidavits, or to allege their insufficiency. The statute relieved them from all responsibility, by providing that "such proof by affidavit shall be valid and conclusive to authorize such subscription to the stock, and the issue of the bonds to the amount specified in such proof." (Laws of 1863, 30, § 18.) The objection that these acts are in conflict with the federal Constitution has been disposed of by the decision of the ultimate appellate tribunal.

We are also of opinion that a mandamus was properly awarded, even on the assumption that the affidavits were only presumptive evidence of the consent required by the previous statutes. By the act of 1856, as amended in 1857 and 1859, the railroad commissioners appointed for the respective towns in the counties proposed to be traversed by the road, were authorized and required to subscribe for a limited amount of the stock, and to issue bonds at par in payment therefor, provided a majority of the tax payers, representing a majority in interest of the taxable property of such towns respectively, should consent thereto in writing; and the fact of such consent was to be proved by affidavits, filed in the appropriate clerks' offices, of the towns and counties respectively.

The affidavits showing such consent by the requisite majority, in number and interest, of the tax payers of the town of Summit, among other towns, having been duly filed, the commissioners were called on, in the fall of 1858, by one of the directors of the company, in respect to the proposed subscription. The amount of town subscriptions had not then reached a million of dollars, as the director informed them, and they declined at that time to subscribe. This information, on which one of the affiants professes to believe that such amount has not now been obtained, was given about seven years before the demand in 1865, on which the motion for a mandamus was founded. When the latter

demand was made, no such objection was raised; nor is there any allegation, as matter of fact, in the defendants' affidavits, either that a million of town subscriptions has not been secured, or that the subscription exceeding that amount, sworn to in the moving affidavit, embraced other than town subscriptions.

The opposing affidavits show the form of the consents used in the town of Summit, and that in the course of taking signatures to one of these papers, an objection was made by Boughton and Levally, two of the tax payers, that if the town took stock before a sufficient amount was subscribed to construct the road, it would change hands, and the town would lose the amount. To obviate this objection, the person applying for their signatures, inserted the word " town " before the word " subscriptions." The appellants allege that a considerable number of persons signed this consent after the alteration. The fact alleged is not inconsistent with the truth of the affidavits filed by the town commissioners, showing an absolute consent by the requisite majority of the tax payers, in number and interest. It is reasonable to assume that the qualified consent was taken from those who would not consent, without qualification, to bring up the number of signers to the two-thirds required by the act, previous to the amendment reducing the requirement to a mere majority. The fact that a majority consented without qualification, is established by affirmative proof, and its force is not repelled by the further fact, that other tax payers either consented in a qualified form, or wholly refused their consent.

It is alleged that the word, interlined in the consent signed by Boughton and Levalley, appears now to be erased. There is nothing to justify the imputation that such an erasure has ever been made either by the company, or by its authority. The consents did not come to its hands until after they had been canvassed by the commissioners, and the affidavits had been filed in the appropriate offices. There was no motive for any alteration in their terms. They were not contracts, either with the State or the company. The statute did not authorize the signers either to subscribe for stock, to borrow

money, or to issue bonds in the name of the town. The sole question submitted by the legislature to the tax payers was, whether they chose to consent to the exercise, by the commissioners, of the provisional authority with which they were invested, to subscribe for stock and issue town bonds for a limited amount, in aid of a public enterprise which so deeply concerned themselves, and the community in which they resided. Such a submission was a ready and convenient form of taking a popular vote, where the ballot would be inappropriate, as a mere numerical majority would not suffice, unless it represented also a majority interest on the assessment roll. The statute did not require the consents to be filed or preserved. The result once ascertained, each of them became *functus officio.* They might lawfully have been destroyed by the commissioners, but it seems they were afterward delivered to the company. Any subsequent alteration or erasure would have been as nugatory as the substitution of a new name on a ballot, after being canvassed in its original form, and after the result of the election had been declared.

The allegations in the opposing affidavits tend only to show that consents were signed in two different forms; and that in one of the forms thus used, the signers undertook to prescribe conditions unauthorized by law, to govern the commissioners in the exercise of a defined statutory authority, and in respect to which individuals were entitled to no voice beyond a simple assent or dissent. It follows from these views, that the mandamus was properly awarded under the previous acts, even if they had been unaided by the amendments of 1863 and 1864. The facts entitle the relators to the relief demanded. The matters set up by way of avoidance were insufficient to absolve the commissioners from the performance of their duty under the statute. They chose to accept the authority conferred on them by the successive acts, and to disobey their specific injunctions, though both proceeded from the same sovereign authority.

It is insisted that, though they were empowered to issue the bonds, they were under no legal obligation to exercise

the power. From the nature of the authority, the duty was plainly mandatory; and the statute, which declared that, upon the filing of the affidavits, the commissioners were "authorized and required to issue the bonds," left them no alternative but compliance with the law, which they chose to disobey.

It is claimed that a peremptory mandamus should not have been awarded in the first instance. In this view we cannot concur. There is no occasion for an alternative writ, when there is no substantial conflict between the parties as to the truth of any material fact essential to the determination of their legal rights.

The order of the Supreme Court should be affirmed.

SMITH, J. (dissenting.) The order appealed from cannot be sustained, except by holding that the affidavits on file are conclusive evidence as against the defendants; that the tax payers of the town of Summit had given the requisite consent to authorize a subscription to be made in behalf of the town to the capital stock of the relators, as directed by the mandamus. Neither the proof on file nor the consent of the taxpayers is set out in the printed case, with which we have been furnished, although they are referred to in the moving affidavit, and the order to show cause recites that it was granted on said affidavit, "and upon the consent in writing, and proof thereof therein referred to, or copies thereof." The defendants, however, in their opposing affidavits, set forth a copy of what they aver to be the original consent or subscription paper; and it is plainly to be inferred, from the whole case, that such paper is also a copy of the consent, appearing on the books of the company, and proved by the affidavits on file, except that the latter consent provides that the commissioners shall not subscribe for stock unless the total of all the subscriptions amounts to one million of dollars, while the original consent provided that they should not subscribe unless the total of the *town* subscriptions amounted to that sum. As the latter condition has not been complied with, the matters alleged in the opposing affidavits constitute a complete defense to the application, unless the defendants

are concluded by the consent and proofs on file, as they now appear.

The majority of the court below held that the defendants were so concluded, by force of the provisions of an act of the legislature, passed in 1863, and amended in 1864, several years after the consent was given and the proof was filed. The act, as amended, provides that, when affidavits of the consent of the tax payers shall have been filed, as required, "such affidavits shall be valid and conclusive proof, in all courts, and for all purposes, to authorize and uphold the respective subscriptions to the stock, and the issue of bonds to the amount specified in such proof, for such terms, respectively, and no clerical, or other defects, in any of such affidavits, shall invalidate such proof, or the subscription to the stock, or the said bonds. (Laws of 1863, p. 30, ch. 18, § 1, amended 1864, p. 911, ch. 402, § 1.) .

The object of that provision is to protect town commissioners, acting in good faith in subscribing for stock and issuing bonds to the amount specified in the proof filed by them, and to protect, also, *bona fide* holders of the bonds, and all persons relying on the faith of the subscription. For those purposes, and in such cases, it makes the proof, filed by the commissioners, conclusive. The present case is not of that nature. Here, the commissioners have not issued bonds, nor subscribed for stock, but the object of the application is to compel them to make a subscription, and issue bonds to pay therefor. In answer to the application, the defendants are not concluded from showing, as they offered to do at Special Term, that the written consent, given by the tax payers, contained an express and material condition, which had not been performed at the time when the application was made, and that, since the consent was given, and the proof was filed, the writing had been altered, by erasing the condition, without the consent of the subscribers. A contrary construction of the act would be palpably unjust to towns and their tax payers, and would give opportunity and encouragement to gross frauds upon them. Upon the assumption that the defense alleged in this case can be sustained by proof, it is

not only the right, but the clearest duty of the commissioners to resist the application, in order to save the town they represent, and its tax payers, from the imposition of an unjust and oppressive tax.

A reference to the act of 1856, authorizing any town in the counties therein named to subscribe to the capital stock of the relators (Laws of 1856, ch. 64, p. 89), and the several acts amending it, passed previously to those containing the provisions immediately in question (1857, ch. 401, p. 810; 1859, ch. 383, p. 905), will show that the legislature did not intend, by those earlier acts, that any town should be made liable to taxation for the proposed improvement, without the consent of a majority of its tax payers first obtained. There is no evidence that the acts of 1863 and 1864 were intended to change the policy theretofore adopted, and subject towns to taxation without the consent of any portion of their tax payers. Yet such would be the obvious effect of giving to those later acts the construction contended for by the relators in the present case, for it would make absolutely binding and conclusive, a consent which, by its terms, was not to be binding except upon a condition that has not been performed.

In the case before us the commissioners should have an opportunity to prove the matters alleged to them, and, for that purpose, the order of the General Term should be reversed with costs of both appeals, and that of the Special Term should be modified, so as to award an alternative, instead of a peremptory mandamus.

LEONARD and PECKHAM, JJ., were also for reversal; all the other judges concurring in the opinion of PORTER, J.,

Order affirmed.