## COURT OF APPEALS.

### THE PEOPLE *ex rel.* INMAN S. LOWELL agt. THE BOARD OF TOWN AUDITORS of the town of WESTFORD.

On the 24th of March, 1864, at a town meeting, held in the town of Westford, called "for the purpose of paying bounties to volunteers in the military or naval service of the United States, during the existence of the war, now carried on, and for the purpose of paying the incidental expenses of such volunteering, and of raising such money," a resolution was passed "That there be paid the sum of $300 to each man drafted and not exempted, and the same be raised by a tax upon the taxable property of the town.

The resolution was amended so as to include those that were drafted last year and paid $300."

On the 8th of June, 1864, the relator was drafted for three years, as one of the quota of the town, under the call by the president, issued September 17, 1863. On the 23d of June, he paid $300, commutation, and was discharged "from further liability under that draft." In April, 1865, a local act, set out in the opinion, was passed, legalizing resolutions by town meetings in the county of Otsego, relating to the payment of bounties to volunteers, substitutes and drafted men.

In November, 1867, the relator presented his claim for $300 bounty, under the resolution, to the defendants who refused to audit it:

*Held*: 1. That the payment of the $300 was a discharge of the duty imposed upon the relator by the draft and not an exemption.

2. That the resolution embraced those thereafter drafted under the impending call.

3. That the local act legalized the resolution.

4. That the term "bounty" covered premiums offered to induce men to enlist and also gratuities, benevolences and generosities.

5. That under the resolution the relator was entitled to $300, and defendants should be required by mandamus to audit his claim therefor.

*June Term*, 1869.

THIS is an appeal from an order made at special term, granting a peremptory mandamus, requiring the defendants forthwith to assemble and audit and allow the relators claim of $300 against the town.

The general term of the sixth district, affirmed the order with the modification that the claim should be audited at the next annual meeting of the board (53 *Barb.*, 555.)

This claim arose as follows : On the 24th of March, 1864,

the town of Westford, at a special town meeting held on that day, passed the following resolution : " Resolved that there be paid the sum of three hundred dollars to each man drafted and not exempted, and the same be raised by a tax upon the taxable property of the town.   The resolution was amended so as to include those that were drafted last year and paid $300."   The meeting was called " for the purpose of paying bounties to volunteers in the military or naval service of the United States, during the existence of the war, now carried on, and for the purpose of paying the incidental expenses of such volunteering, and of raising such money."

The relator, a resident of the town of Westford, on the 8th day of June, 1864, was drafted into the military service for three years, and on the 23d of June, 1864, paid to the proper officer $300, and was discharged from " further liability under that draft.

On the 14th of April, 1865, a local act, relating only to the counties of Herkimer and Otsego, was passed, which is set out in the opinion of the court.

On the 7th of November, 1867, the relator presented the board of town auditors of the town of Westford, his claim for the amount so paid by him, accompanied by the requisite proofs and the board passed upon and rejected the claim, and refused to audit and allow the same.

J. E. DEWEY, *for appellants*.
N. C. MOAK, *for respondents*.

HUNT, Ch. J. No allegation is made by the appellant that the town meeting of Westford, held on the 24th of March, 1864, was not legally convened.   I do not myself perceive anything in the papers or the proceedings to lead me to doubt that the electors of that town were on that day legally in session, as a town meeting, I shall, therefore, assume the meeting to have been legally convened.

The act of the legislature, passed on the 14th day of April, 1865, provided that " all acts or proceedings of the town auditors, or of legally convened town meetings in the several towns in the counties of Herkimer and Otsego, relating to the payment of bounties, to volunteers, substitutes and drafted men, together with all bonds or obligations, made or issued in pursuance of said acts and proceedings, and all taxes laid or imposed under said acts or proceedings, are hereby legalized, confirmed and made valid, provided that this act shall apply only to such acts and proceedings as were done, or had prior to the tenth day of February, eighteen hundred and sixty-five," (*Laws of* 1865, *ch.* 440, § 1, *p.* 800.)   The acts in question were done prior to the date limited.

The first defense made by the board of town auditors to the relators claim is, that he does not come within the terms of the resolution, for the reason that he was not drafted and not exempted.

It is conceded that he was drafted, but it is said that he afterwards appeared before the Provost Marshal and his associates, and under the provisions of the act of congress of March 3, 1863, (§ 13) paid the sum of three hundred dollars, and thereby became discharged from further liability under that draft.   It is conceded that he did make such payment and became so discharged.

I quite agree with the relator that he was, both in words and in substance, within the terms of the resolution, and that the proceedings before the provost marshal do not impair his claim.   He was drafted and not exempted.   The act of congress of February 24, 1864, (§ 10, *ch.* 13, *vol.* 13 *p.* 8,) declares who shall be exempt from the draft.   They are those :   1. Who are physically or mentally unfit for the service.   2. Persons actually in the service at the time of the draft.   3. Persons who have served for two years during the then present war, and have been honorably discharged.

The statute then proceeds " but no person except such as are herein exempted shall be exempt."

The relator did not fall within either of these classes. Being thus drafted and having no claim to exemption, three courses were open to him. He might enter the service and discharge the duties of a soldier as prescribed by law, or 2d, he might "furnish an acceptable substitute to take his place in the draft," or 3d, he might pay to such person as the secretary of war should authorize to receive it, a sum not exceeding three hundred dollars "for the procuration of such substitute," (*Stats., U. S., March* 3, 1864, § 13, *vol.* 12, *p.* 733.)

If he served in person, the case disposed of itself without further provision. In the event that he furnished a substitute himself or paid the money to enable the secretary of war to procure a substitute, the statute declared that he should be " discharged from further liability under that draft."

The payment of the money to the government to enable them to procure a substitute, or the furnishing himself a substitute, was a discharge of the duty imposed by the draft and not an exemption. It was a performance and not a release without performance. In no just sense can a man be said to be exempt from the payment of a debt, when he has been sued—a judgment recovered against him, and the amount forcibly made from his property. A soldier who serves out his time, the drafted man who procures another actually to perform his duties, or who furnishes the money to the government for the same purpose, with the debtor I have named, are each relieved from the burden imposed upon them. The relief, however, comes from a performance of the duty, and not from an exemption from its claims. Nor is this argument affected by the fact, that the statute of the U. S. of 1864, in its fifth section, declares that the " exemption of any person " on account of such payment, shall not extend beyond one year, but that at the end of

the year, the person " so exempted," may be again enrolled. Exemptions, as such, are specifically defined, and the word in the fifth section, is used simply as a *descriptio personarum*, and not by way of definition. It cannot be held to impeach that section, which declares, that no other than those specifically mentioned "shall be exempt."

Considered both with reference to the statutes of the United States, as well as to the plain language of the resolution of the town of Westford, I have no doubt, that the relator came within its meaning, as a man drafted and not exempted.

A question is made, whether the resolution recited embraced those to be thereafter drafted, or whether it was limited to those who had already been drafted. The language is, " to each man drafted and not exempted." While it would have been easy to have said "to be hereafter drafted," if subsequent action only was contemplated ; it would have been equally simple to have said " heretofore drafted and not exempted," if it had been the intent of the meeting so to limit its action. A draft had been had, and a draft was impending, as the attendants at the meeting then knew, and as we now know from the history of the events of the war, and which was actually enforced in a short time thereafter. I see nothing to authorize the inference that this promised bounty was not prospective, while a strong argument in its favor is found in the supplement to the resolution, which provided that the relief should be furnished to those who had been drafted the year previous, and paid the three hundred dollars. If the body of the resolution had been understood as applying to past transactions only, such an amendment would not have been offered.

The appellant argues, that the call of the meeting was for a specific purpose, authorized by law, and that the only resolution adopted, (if the relator's construction be correct) was not authorized by any law. This is quite probable. If the resolution adopted had been of itself legal and consti-

tutional, it would not have been necessary to invoke the act of 1865 in its support.   It is only upon the theory that it exceeded the limits of the existing powers of a town meeting, that the subsequent act of the legislature, making it legal, is important.

The appellant further argues, that the act of 1865  relates to and legalizes a bounty to that  class of drafted men only who actually entered the service, and not to those who were drafted and furnished a substitute or the money for a substitute.   No doubt the language would include that class if any such existed.   I see no reason, however, for so limiting the operation of the act, especially when we find that the class proposed to be excluded required such legislation, and we have no evidence that the other class did need it.   The papers do not show, nor are we in any manner advised, that town resolutions were passed respecting drafted men actually in the service, which required legislative aid to make them effectual.

In like manner, it is insisted that the use of the word "bounties," in the act of 1865, is conclusive against the relator, as it would be absurd, it is said, to apply it to those who were drafted but were discharged because of physically disability, or by reason of there being a surplus.

Such action on the part of a town, would indeed be quite unreasonable.   It was not anticipated by the legislature, and we have no reason to think that any such existed; certainly the present case is not one of that character.   The town of Westford guarded against such an absurdity, by providing that the objects of their bounty should be, not only men who were drafted, but men who were not exempted.   In whatever form the citizens of Otsego and Herkimer had  pledged themselves to volunteers, substitutes or drafted men, the legislature intended to enable them to redeem their promises. "Bounties" are not only premiums offered to induce men to enlist into the public service, but they are gratuities, benevolences or generosities, extended as well to those ac-

tually in the service of their country, as to those who, after a faithful discharge of such services, have become relieved therefrom.

Many such instances have occurred under our own government.

The power of the legislature to authorize or to enforce the imposition of taxes is unlimited. (*Town of Guilford* agt. *Supervisors of Chenango*, 3 *Kern*, 143 ; *Howell* agt. *Buffalo*, 37 *N.Y.* 267; *People* agt. *Mitchell*, 35 *N.Y.*, 552; 3 *Wallace*, 327 ; 5 *Wallace*, 293 ; 13 *N. Y.* 149.)

The order should be affirmed with costs.

LOTT, J. The legality of the special town meeting, at which the resolution, under which the relator makes his claim, was passed, is not questioned.

Assuming that it was legally convened, all its acts and proceeding " relating to the payment of bounties to volunteers, substitutes and drafted men" were, by the local act of April 14, 1865, (*Laws of* 1865, *chap.* 440, § 1,) relating to the counties of Herkimer and Otsego, legalized, confirmed and made valid.

The resolution originally offered, provided, " that there be paid the sum of three hundred dollars to each man drafted and not exempted, and the same be raised by tax upon the taxable property of the town," but was amended " so as to include those that were drafted last year, and paid three hundred dollars," and as amended, was adopted.

It is evident from the amendment to the resolution, that the portion first offered was intended to apply to such men as should be thereafter drafted. The relator was one of those. He was not exempt, under the act of congress, from enrollment and draft, and on being drafted and notified to appear before the board of enrollment, he was held to service. He then paid, to a person duly authorized to receive it, the sum of three hundred dollars, for the procurement of a substitute, which payment entitled him to be discharged

from further liability under that draft, and thereupon the board of enrollment gave him a certificate that he was " exempt from all liability to military duty for this draft." Although the term " exempt" is used, it is evident that it was used in the place of "discharged."

The resolution in limiting the appropriation to those "not exempted" clearly had refererence to such as were liable to enrollment and draft, and were not rejected as physically or mentally unfit for service, or entitled to absolute exemption for the specific causes mentioned in the act of congress.

Its fair meaning is, that every person who was drafted and liable to be held for service, should be paid three hundred dollars. It is not restricted to men who did personal service under the draft. Those who procured substitutes or gave the requisite sum to procure one, stood on the same footing with them.

This is manifest from the amendment made " so as to include those that were drafted last year and paid three hundred dollars."

The relator was, therefore, entitled to the payment of the sum specified by the resolution. That appropriation was a " bounty to drafted men " within the meaning of the act of 1865, and was legalized by it.

I deem it unnecessary to add anything further, than to say that I fully concur in the well considered and able opinion of the learned justice who gave the opinion of the supreme court at general term, and in the views expressed by him.

The order appealed from should be affirmed with costs.

Decision accordingly.