C. A. J. HARDENBERGH, as Supervisor of the Town of Shawangunk, Appellant, *v.* ELI VAN KEUREN, EDMUND BRUYN, LUTHER HORNBECK and FLOYD S. McKINSTRY, Impleaded with others, Respondents.

*Board of commissioners to issue town bonds — what a breach of duty on its part — Power of Legislature to dispense with consent of town — When a contract is made, not alterable by the Legislature.*

This action was brought against the defendants, on a bond given by them as commissioners of the town of S., under an act authorizing it to issue bonds and take stock in a railroad company. The bond was given in pursuance of the statute, and was conditioned "for the faithful discharge of their duties." The complaint alleged as a breach the willful and fraudulent issue of the bonds by the commissioners, in 1867, before the consent of the town had been obtained, as required by the act, with knowledge on the part of the commissioners that such consent had not been obtained; it was further alleged that the bonds had been sold, transferred and delivered to divers persons, and were held by citizens of this and other States.

As one defense the defendants set up an act of the Legislature, passed in 1868, expressly ratifying and confirming the acts of the commissioners in issuing the bonds. A demurrer to this defense was interposed by the plaintiff.

*Held* that the complaint set forth a breach of the condition of the bond, and a a cause of action sufficient to justify the recovery of damages therefor.

That, as the Legislature had no power to compel the town to issue its bonds in aid of the railroad, without its consent, it could not, by a subsequent act, dispense with the condition in the original act requiring such consent as a prerequisite to their issue (per Bockes, J.

That the bond sued upon was a contract; that the issuing of the bonds, fraudulently and collusively, without the consent required by the act, and with knowledge that such consent had not been had, was a breach of such contract on the part of the commissioners; and that any subsequent Act attempting to relieve them from the liability so created was a violation of subdivision 1 of section 10 of article 1 of the United States Constitution, and void (per Learned, P. J.).

That the demurrer should be sustained.

APPEAL from an interlocutory judgment, entered at a Special Term of this court, held in Ulster county, overruling plaintiff's demurrer to a defense in the answers of the defendants, setting up the provisions of chapter 45 of the laws of 1868.

The action is brought on the official bond of two of the defendants, and their deceased colleague, as commissioners of the town of Shawangunk, under an act of the Legislature authorizing certain towns in the counties of Ulster and Orange to issue bonds

and take stock in the Walkill Valley Railroad, passed May 9th, 1866. (Session Laws of 1866, ch. 880.) The bond was given in pursuance of the ninth section of the act requiring a "bond in the penal sum, equal to the amount to be issued by said towns," and "conditioned for the faithful discharge of their duties," etc. The same section provides that the bond shall be deposited with the supervisor, "to be collected by him, or his successor in office, for the use and benefit of said town, in case the commissioners, or either of them, are guilty of such breach of duty or malfeasance in office as to render said bond collectible."

The breach of the bond assigned in the complaint is the willful and fraudulent issue of the bonds of the town of Shawangunk by the commissioners, on the 2d or 3d day of December, 1867, before the consent of the town had been obtained, as required by the provision of the second section of the act. The defenses demurred to interpose an act of the Legislature passed March 20, 1868 (Session Laws of 1868, chap. 45), and sets up the second section as a performance and nullification of the official bond as to matters set forth in the complaint. The following are the provisions of the act interposed as a defense : Section 1. It shall be lawful for the Walkill Valley Railroad Company to use upon their road iron rails, weighing not less than fifty pounds weight to the lineal yard. Section 2. The acts of the commissioners in issuing the bonds of the second election district of the towns of Montgomery, in Orange county, and of the towns of Gardiner and Shawangunk, in Ulster county, in aid of the Walkill Valley Railroad, are hereby ratified and confirmed. Section 3. This act shall take effect immediately.

The court at Special Term held that by the second section of the latter act, the acts of the commissioners in issuing the bonds were rendered valid, and gave judgment for the defendants on the demurrer, thereupon the plaintiff appealed to the General Term.

*D. M. DeWitt*, for the appellant.

*F. L. Westbrook*, for the respondent McKinstry. When the Legislature can authorize a municipal corporation to do a certain act in a certain manner, or upon a certain condition, which act

has, by the persons deputed to do it, been done, but in an irregular manner, a subsequent statute legalizing the act or healing irregularities in its execution, is valid and operates as a ratification and confirmation of the act so done by the persons originally appointed to do it. (*People* v. *Mitchell*, 35 N. Y., 551; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; *Williams* v. *Town of Duanesburgh*, 66 id., 129, 137; *Stockdale* v. *Ins. Co.*, 20 Wall., 323, 331; *The Clinton Bridge*, 10 id., 454, 462; 69 N. Y., 367.)

*Winfield, Leeds & Morse*, for the respondents Van Keuren and Bruyn; *William L. Snyder*, for the respondent Hornbeck. The Legislature may, in its discretion, authorize bonds to be issued for local improvements, without the consent of any of the tax-payers unless restricted by the Constitution. (*People* v. *Mitchell*, 35 N. Y., 551; *S. C.*, 45 Barb., 208; *Williams et al.*, v. *Town of Duanesburgh*, 66 N. Y., 129; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; *Town of Guilford* v. *Supervisors*, 13 id., 143; *Brewster* v. *City of Syracuse*, 19 id., 116; *Starin* v. *Town of Genoa, and Gould* v. *Town of Sterling*, 23 id., 439; *S. C.*, 1 Am. Law Reg. [N. S.], 290; *Grant* v. *Courter*, 24 Barb., 232; *People* v. *Mayor, etc., of Brooklyn*, 4 N. Y., 419; *Thompson* v. *Lee Co.*, 3 Wall. [U. S.], 327; *St. Joseph Township* v. *Rogers*, 16 id., 661; *Belo* v. *Forsythe*, 76 N. C., 489; *S. C.*, 4 L. & Eq. Rep., 295; *Richie* v. *Franklin Co.*, 22 Wall. [U. S.], 67; Cooley on Const. Lim., 361, 371; Cooley on Taxation, 223, 232; Dillon on Muni. Cor., §§ 46, 424.) The mode of exercising legislative power is not a subject for judicial review. (*Town of Duanesburgh* v. *Jenkins*, 57 N. Y., 177; *Bank of Rome* v. *Village of Rome*, 18 id., 38; *People* v. *Osborn*, 57 Barb., 663; *People* v. *Flagg*, 46 N. Y., 401; *Benson* v. *Mayor*, 24 Barb., 248; *West River Bridge Co.* v. *Dix*, 6 How. [U. S.], 532; *Walpole* v. *Elliot*, 18 Ind., 258; The Legislature may, by subsequent enactment, supply a power which its agents did not possess when the act was done. (*Tanner* v. *Albion*, 5 Hill, 121: *Knapp* v. *Newton*, 1 Hun, 268; *Bay* v. *Gage*, 36 Barb., 447; *Bennett* v. *Fisher*, 26 Iowa, 497; *State* v. *City of Newark*, 27 N. J. Law [3 Dutch.], 185.) The act in question does not impair the obligation of a contract or take away a vested right so as to conflict with the United States Constitution, because it is

not an action on contract but to recover a penalty. A party has no vested right in a penalty which is a public fund, and may be released by the Legislature. (*Mechanics' Bank* v. *Bliss*, 35 N. Y., 412; *Hyatt* v. *Roach*, 52 How. Pr., 115; *S. C.*, 1 Abb. [N. C.], 125; *State* v. *R. R. Co.*, 12 Gill & Johns., 436; *S. C.*, 3 How. [U. S.], 534; *Coles* v. *Madison Co.*, 1 Breese [Ill.], 154; *Norris* v. *Crocker*, 13 How. [U. S.], 429; *U. S.* v. *Mann*, 1 Galli., 177; *U. S.* v. *Passmore*, 4 Dallas, 372; *Wilkinson* v. *Leland*, 2 Peters [U. S.], 627.) Where a statute is repealed, all proceedings under it must end; and if a penalty be provided, it cannot be enforced, even though an action were pending. Nor can sentence be executed after the repeal of the law under which it was passed. (*People* v. *Hartung*, 4 Park. Crim. Cas., 256; *Hartung* v. *People*, 22 N. Y., 95; 26 id., 167.) The Legislature has always exercised the right to control prosecutions for penalties which its own legislation has imposed, at any stage of the proceedings before sentence or judgment. (*Curtis* v. *Leavitt*, 15 N. Y., 9; *Butler* v. *Palmer*, 1 Hill, 334; *People* v. *Board of Police*, 40 Barb., 626, and cases cited, *supra*.)

BOCKES, J..

The recent decision in the Court of Appeals in *Horton* v. *The Town of Thompson* (6 W. D., 35), not yet reported in the New York Reports, the opinion in which case has been furnished us, seems entirely decisive of the question as to the validity of the curative act of 1868. That decision is based on the principle settled in *The People* v. *Batchellor* (53 N. Y., 128), and gives the doctrine of the latter case practical application to the question here presented. In *Horton's* case the consent of the tax-payers of the town, as required by law, to the issuing of the bonds by the commissioners, was fatally defective, and a curative law was passed which, in terms, ratified and confirmed the acts of the commissioners in issuing them. The court held the curative act unauthorized and void. Judge RAPALLO, speaking for a majority of the court, after remarking that it was claimed that the curative act made the bonds a debt against the town, said : " I think this was beyond the power of the Legislature, and was precisely what it was decided in the case of *The People* v. *Batchellor*

could not be done;" and further referring to the bond in suit, he added : "The bond not having been originally issued in conformity with the consent of the tax-payers, and that being the only action on the part of the town towards the contracting of the debt, the Legislature had no power to validate the bond unless it had the power to authorize or direct the commissioners originally to contract the debt without any consent or action on the part of the town. *This, as was decided in the Batchellor Case, it had no power to do ;* and it necessarily follows that this confirmatory act cannot aid the plaintiff's case. It was not, in this respect, merely curative of an irregularity in the exercise of a power which had been conferred; but it undertook to give validity to an act which had been done without the consent of the town and in violation of law, and which the Legislature had no power to authorize to be done without such consent." According to this authority the confirmatory or curative act here interposed as a defense is valueless as an answer to the matters alleged in the complaint.

We might here content ourselves by saying *ita lex scripta est ;* but it may be well to recur to the case of Batchellor in order to see precisely what was there decided, as well as the grounds of the decision. It was there decided that the legislative power over municipal corporations was not supreme; that the latter might be compelled by legislative enactment to provide for subjects of a public character exclusively, or to enter into contracts for exclusively public purposes, yet that the Legislature could not create a debt or authorize a debt to be created against them for a private purpose, or to aid in the construction of works, which, although public in some respects, were private in others ; and further, that railroads belonged to the latter class of works. The ground of the decision will be readily seen by carefully noting the distinction marked by the court between subjects of a purely public character, and those which are private or *quasi* private in their ends and purposes. The line of reasoning in Batchellor's case maintains this distinction, and in conclusion it was determined that the Legislature was impotent to impose a debt upon a municipality for a private or *quasi* private purpose, without its consent, either through its officers or tax-payers; that

in this regard there was a limitation of power in the Legislature — that it could legislate only with a view to exclusively public interests, when taxation was necessarily or probably involved in it. So, Judge RAPALLO, in speaking of the Batchellor case, says : " While the opinion in that case recognizes the power of the Legislature to authorize or enable a town or other municipality, acting through its officers or taxable inhabitants, to contract a debt in aid of the construction of a railroad by a private corporation, it confines the power of the Legislature to conferring such authority, and requires that the contracting of the debt be the voluntary act of the municipality; or that it be done with the consent of the taxable inhabitants; and the case itself is an express adjudication that the Legislature cannot impose such debt upon the municipality without such consent.". (*Horton's Case, supra.*) It may be here noted that the commissioners were not the agents or officers of the town, by whose action the consent of the town will be deemed to have been given. (*Horton's Case, supra.*) Thus it seems that the proposition of the learned counsel for the respondents in this case, that the Legislature could have authorized the bonds to be issued without the consent of the municipality or tax-payers, is not sound; and although it is a sound doctrine, sustained by numerous decisions, that the legislature may validate retrospectively what it might have authorized in advance, yet it could not by a curative act give validity to that which it had no power to authorize to be done originally. The holding that the former part of the above proposition is unsound seems to be in conflict with several cases heretofore decided. (*The People* v. *Mitchell*, 35 N. Y., 551; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; *Williams* v. *The Town of Duanesburgh*, 66 id., 129.) It is true that the question was not directly before the court in the first two cases cited. In *Mitchell's Case* the learned judge who gave the prevailing opinion, says (page 554), " the fact that a majority consented without qualification, is established by affirmative proof." Due consent was therefore deemed to have been given. In *Jenkins' Case*, JOHNSON, J., speaking for the Commissioners of Appeals, held that the issuing of the bonds by the commissioners was consent by the town to the incurring of the debt. He says (page 191) : " The only officer of the town,

who had any duty in the premises, acted by giving the bonds; and the Legislature, seeing the whole matter, released the condition which it had imposed, and declared his assent binding upon the town, if the bonds had been issued and the road had been built, and the bonds in that case obligatory." He added: "As it might have authorized action in this way and on these conditions by the town originally, I see no objections to giving effect to its ratification of the action of the town and holding its consent thus expressed effectual." But this ruling by the Commission of Appeals was expressly repudiated by the Court of Appeals in *Horton's Case*, and must now be deemed overruled. In *Williams' Case*, the entire subject was again discussed, and *Batchellor's Case* was especially considered; and ALLEN, J., there says that the judgment pronounced in *Batchellor's Case* went far towards overruling, directly and in terms, the former decisions on the subject; and further, that such was the logical and necessary sequence of that judgment ; and that there was no ground upon which it and the cases which preceded it could be reconciled or made consistent. The court settled down, however, in *Williams' Case* (if the reporter has succeeded in properly extracting what was there, in fact, decided), upon this rule, that where, in pursuance of legislative enactment, municipal bonds have been issued and transferred to purchasers for value, *prior to the decision in The People v. Batchellor*, they are protected by *the earlier decisions*, and as far as their validity depends upon the constitutional power of the Legislature, will be sustained. This ruling would, in effect, seem to uphold the defense to which the demurrer is here interposed, inasmuch as the bonds are alleged to have been sold and transferred to various persons prior to the decision in the *Batchellor Case*. But, then, we have the more recent decision in *Horton's Case* on a state of facts on all fours with the case in hand, and to this, at least for the time being, we owe obedience. Thus, then, we are brought to the rule decided in *Horton's Case*, that the Legislature could not authorize the issuing of the bonds without the consent of the municipality duly given; that it was not duly given by the issuing of the bonds by the commissioners, and that if the Legislature had no power to authorize the issuing of the bonds without the consent of the

town, it was equally impotent to pass the affirmatory act of 1868 (chap. 45). It follows, from the above conclusions, that the curative act of 1868 was and is unauthorized and void, hence valueless as a defense to the matters stated in the complaint. We must now examine that pleading, in order to see whether a cause of action is there averred; because, if no cause of action be there stated, the defendants would still be entitled to judgment on the demurrer. The right of the supervisor to maintain the action for a breach of the bond in suit is undoubted. The ninth section of the act of 1866 (chap. 880) provides that the bond required to be given by the commissioners shall be deposited with the supervisor of the town, "to be collected by him, or his successors in office, for the use and benefit of the town, in case the commissioners, or either of them, are guilty of such breach of duty or malfeasance in office as to render the bond collectible." The action is well brought by Mr. Hardenbergh as supervisor of the town.

The condition of the bond was to the effect that the commissioners should faithfully discharge their duties as such commissioners for the town under the act, and should justly and honestly apply all moneys, stocks or bonds issued by them or coming into their hands as such commissioners, according to the true intent and meaning of said act. The breach alleged was that the commissioners did not faithfully discharge their duties in this (1) that they willfully, collusively and fraudulently issued the bonds without the consent of the town as the law required; and (2) that they retained in their hands and failed, and omitted to apply as the law required the sum of $201, which came to them as commissioners. This last alleged breach of the bond was withdrawn on the argument by consent of counsel, and was expunged from the record. The breach relied upon, given more in detail, is this: That the commissioners willfully, collusively and fraudulently issued the bonds which purported to have been executed under the act, knowing that the consent of a majority of the tax-payers had not been obtained as the law required; and it is averred that such consent never was obtained; and further, that the bonds had been sold, transferred and delivered to divers persons, and were held by citizens of "this and other States." It was also averred that the commissioners made their report to the board of supervi-

sors from year to year as the law directed, and that thereupon large sums of money were assessed upon, and were levied and collected from the town. These averments are quite sufficient by way of alleged breach of the instrument in suit. True, according to these averments (and they stand admitted on the demurrer), the bonds issued by the commissioners had no validity; certainly none, save perhaps as they should be held by *bona fide* holders; but if issued by the commissioners in due form with proper recitals, showing on their face full compliance with the law under which they were issued, and so passed to *bona fide* holders, it may be that the vice in their origin cannot be urged as a defense. (*Cromwell* v. *County of Sac.*, 96 U. S. Rep. [6 Otto], 51; *Com'rs.* v. *Clark*, 94 id., 278; see remarks of CLIFFORD, J., on page 287, and authorities there cited; also *Bank of Rome* v. *Village of Rome*, 19 N. Y., 20; *Brainerd* v. *N. Y. and H. R. R. Co.*, 25 id., 496.) But we do not here propose to pass upon the question of the validity of the bonds, issued by the commissioners, in the hands of *bona fide* holders, as that question is not necessarily brought up by the demurrer. If the commissioners put the bonds in circulation, knowing of their invalidity, because of the omission to obtain the consent of the town to the incurring of the debt, in consequence of which the town *has been* or may be compelled to raise money to meet the claims, or any part of them, there was a breach of their obligation, by which they were bound to a faithful performance of duty. The issuing of the bonds without authority, knowingly, was at least, technically, an unfaithful performance of their duty as commissioners. It is out of place here to lay down a rule of damages for the trial of the case. The damages, beyond nominal damages, are matters of proof. All we decide here is that, according to the averments of the complaint, there was a breach of the condition of the bond in suit, and that the act of the Legislature, interposed as a defense, is valueless for the purpose for which it is pleaded. The conclusions hereinabove stated lead to the reversal of the judgment ordered for the defendants on the demurrer, as directed at Special Term. It is presumed that the defendants will not care to amend, as this decision does not affect the other matters of defense interposed; and besides, if correct in

our conclusions, an amendment cannot be made which will make good the alleged defense challenged by the demurrer.

Order and judgment appealed from reversed, with costs of Special and General Terms against the defendants, to be allowed on the entry of final judgment in the case, and judgment ordered for the plaintiff on the demurrer.

BOARDMAN, J., concurred. LEARNED, P. J., concurred in the result. See the following opinion:

LEARNED, P. J.:

The complaint alleges that the defendants, on the 26th of January, 1867, with certain persons since deceased, executed to the plaintiff, a supervisor, a bond conditioned, among other things, that Van Keuren, Bruyn and Radiker, commissioners for the town of Shawangunk, should faithfully discharge their duties as such commissioners, etc. It alleges, in substance, for a breach of the condition, that about the 3d of December, 1867, the commissioners, without obtaining the consents required by the act, and knowing that such consents had not been obtained, unlawfully, willfully, fraudulently and collusively executed, issued and transferred certain bonds of the town to a railroad company, and that that railroad company has transferred the same to divers persons, and that the bonds are held by citizens of this State and of other States. The defendants, among other things, allege for answer an act of the Legislature of New York, passed March 20, 1868, ratifying and confirming the acts of the commissioners in issuing these bonds. To this the plaintiff demurred. The court below overruled the demurrer, and the plaintiff appealed. As it seems to me the bond sued upon was a contract. The issuing of the town bonds, fraudulently and collusively, without the consents required by the act, and with knowledge that such consents had not been obtained, was a breach of that part of the condition which required a faithful discharge, by the commissioners, of their duties. By such breach a liability was caused for the damages consequent thereupon. Any subsequent legislation which relieved, or attempted to relieve, the obligors on that bond from their liability for the damages occasioned by such breach, would, in that respect,

be an attempt to impair the obligation of a contract, and hence would be void under the Constitution of the United States. It is not, perhaps, necessary to say whether the act of 1868 was, or was not, valid for some purposes; for instance, as respects the bonds themselves, and as between the town and the bond-holders. But the defendants claim for that act the same effect as if it had declared, in express terms, that the obligors in the bond given by the commissioners to the supervisor should not be liable for a certain breach of the condition already committed. I think the Legislature had no power to do this, if the act of 1868 has, by its terms, that effect. If it had not, then, of course, it constitutes no defense.

Whether the act of 1868 made the bonds valid as against the town may, perhaps, effect the question of damage, which is not before us. If the bonds are still invalid, the defendants may, perhaps, claim that the town suffered no damages by the wrongful action of the commissioners. If the bonds are now valid, the plaintiff may perhaps claim that the liability on the bond is owing to that wrongful action.

Without, therefore, attempting to discriminate and select from the conflicting decisions as to the effect of a (so-called) curative act upon the bonds, I think, for the reasons given, that the act of 1868 could not relieve the defendants from the liability which (for the purposes of the demurrer), it is admitted that they had already incurred.

And I concur in the result of the foregoing opinion.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment overruling demurrer reversed with costs of Special and General Terms to be allowed on final judgment, and judgment interlocutory ordered for plaintiffs on demurrer.