In the Matter of the Petition of the PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY to Vacate an Assessment.

*Power of the legislature to declare assessments valid — right to be heard as to the apportionment — a letting of city work to the highest bidder is not in itself evidence of fraud.*

The charter of the city of Albany (chap. 298, Laws of 1883) provided that "all assessments heretofore levied in the city of Albany, proceedings to vacate, review or set aside which were not pending January 15, 1883, are hereby validated and confirmed." An assessment for paving a street in said city was made and confirmed, and no proceedings attacking it had been commenced prior to the passage of said act. Subsequently proceedings to set it aside were taken before the county judge, under certain provisions of the city charter, and various irregularities were alleged, and, among others, the fact that the work was fraudulently let to the highest bidder.

*Held* (assuming that the county judge had jurisdiction to entertain this proceeding) that the legislature had power to confirm and make valid the assessment complained of.

That the legislature could, if necessary, impose by its own statutory command a complete assessment, except in the respect that it must provide that the individual shall be heard by the proper authority as to the apportionment thereof.

That, inasmuch as the charter of said city nowhere required the work to be let to the lowest bidder, a letting to the highest bidder, without proof that the sum levied was thereby unlawfully increased, did not justify a finding that there resulted therefrom a fraudulent addition to the cost of the work.

*Semble*, that the county judge had not jurisdiction to entertain this proceeding taken under the provisions of chapter 298 of 1883, as this proceeding was not made applicable by that act to the present case.

Appeal by the City of Albany from the judgment, decree and order made by the Hon. John C. Nott, County Judge of Albany county, in this proceeding to vacate an assessment for the improvement of a portion of South Pearl street, in the city of Albany, entered in the clerk's office of Albany county on the 21st day of December, 1889, after a hearing before him pursuant to title 11 of the charter of said city (chap. 298, Laws of 1883).

The improvement in question was made pursuant to an ordinance of the common council of the city of Albany, passed April 30, 1880. After the work was completed, and on October 15, 1881, the apportionment and assessment were made and confirmed, and, pursuant to chapter 290 Laws, of 1880, payment of the assessment was

extended for five years. In April, 1883, chapter 298 of the Laws. of that year was passed. It created a new charter for the city of Albany. These proceedings were instituted under title 11 of the new charter. The first section of the eleventh title provides that " No assessment that may hereafter be levied shall be void, or shall be vacated by any court because of a failure on the part of the contractor to comply, in the execution of the work, with all the requirements of law or the contract in respect thereto," and then provides a remedy for such failure, provided, among other things, the owner or taxpayer aggrieved " within twenty days after the confirmation of the assessment take the proceedings mentioned in the next section." The section thus concludes : "And all assessments heretofore levied in the city of Albany, proceedings to vacate, review or set aside which were not pending January 15, 1883, are hereby validated and con- firmed." The other sections of this title are as follows :

" § 2. If in the proceedings relative to any assessment or assessments for local improvements in the city of Albany, or in the proceedings to collect the same, any fraud or defect in the work or substantial error shall be alleged to exist or have been committed, the party aggrieved thereby may apply to have the assessment vacated or reduced, or both, to a judge of the Supreme Court, at Special Term or at chambers, or to the county judge, who shall thereupon, upon due notice to the counsel of the corporation of said city, and to the contractor and his sureties, or any other person, if they, or either of them be proper parties, proceed forthwith to hear the proofs and allegations of the parties."

" § 3. If after such hearing it shall be finally decided that the alleged fraud or defect in the work or substantial error exists or has been committed, the said assessment shall be vacated, except as hereinbefore otherwise provided, and the lien created thereby, or by any subsequent proceeding, shall, except as hereinbefore otherwise provided, cease ; and hereafter no suit or action in the nature of a bill in equity or otherwise, shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title arising from any assessment hereafter made. In case the assessment shall not be vacated, the assessment may be reduced or judgment may be given as hereinbefore provided. Owners of property shall hereafter, in proceedings to reduce or vacate or stay payment of assess-

ments, be confined to the form of proceeding in this title mentioned. The court may, in a proper case in proceedings under this title, direct that any issue or issues of fact be tried before a jury."

The petition upon which the county judge assumed jurisdiction ·alleged (1) that chapter 77 of the Laws of 1870 under which the assessment was made is unconstitutional and void; (2) that no petition for an ordinance for such improvement signed by persons owning not less than one-third of the number of feet fronting both sides of the street, appearing on the annual tax-rolls on file in the office of the receiver of taxes, was ever presented to the common council as required by section 19 of said act, as amended by chapter 536 of the Laws of 1871; and no notice of such proposed ordinance, stating the kind of work and inviting parties interested therein to present their objections, if any, thereto was ever published for five days in the official newspapers before its final passage, ·as also required by the same section of the aforesaid act; (3) that the ordinance was not passed as required by said act, and subsequent acts amendatory thereof, and was not approved by the mayor as required thereby; (4) that an ordinance of the common council of the city required the publication of a notice by the street commissioner for bids or proposals for doing the work in the official papers for five consecutive times before any contract was awarded, unless a different publication should be specially ordered by the board of ·contract and apportionment; and in this case such an ·order was made by the board requiring a publication of the notice for fifteen days, but such notice was not published the number of times thus required, nor in form or substance as required by such ordinance or order aforesaid; (5) that the contract for said work was fraudulently and illegally awarded by the board of contract and ·apportionment to James N. Brady, who was the highest, and not the lowest, bidder, contrary to the duty and the standing rule of the ·board, and a contract thereupon illegally and fraudulently entered into with said James N. Brady and Thomas McCarthy, the latter of whom had offered no bid or proposal for the work, whereby the ·expense of the improvement was increased in the sum of $30,000, which was illegally included in the assessment, and the burden thus proportionately increased against the property owners, including ·the petitioner; (6) that the terms of the contract in respect to mate-

rials and the manner of doing the work were not performed, so that the total value of the work and materials did not exceed the sum of $20,000; (7) that the board, nevertheless, estimated and determined the expense of the improvement at $61,694.85; (8) that the board and city officers in making the apportionment and assessment failed to comply with the city charter in ratifying and approving it as submitted by the clerk without examination, and in not apportioning it among the houses and lots in proportion to the benefits received, as well as in not verifying it, and not publishing the notice of the assessment as required, and legally confirming the same; (9) that these frauds and irregularities do not appear on the face of the proceedings.

The answer denied the alleged frauds and irregularities, and averred that all the proceedings were legal and regular.

The proceeding was instituted under section 2 of title 11 of chapter 298 of the Laws of 1883, above quoted. The county judge found all the principal issues in favor of the petitioner and vacated the assessment.

*D. C. Herrick,* for The City of Albany, appellant.

*E. J. Meegan* and *E. Countryman,* for the President, etc., of the Delaware and Hudson Canal Company, respondent.

LANDON, J.:

It was intended by title 11 of the new charter, above set forth, to accomplish these results:

1. To prevent for the future the vacation of an assessment, because of the failure on the part of the contractor to make strict performance, but to make the contractor and his bondsmen liable for his default, and to reduce the amount of the assessment if justice should require it.

2. To validate and confirm all assessments levied prior to January 15, 1883, as to which no litigation was then pending.

3. To preserve existing remedies as to such pending litigation.

4. To provide a new remedy for future cases, and to abolish the existing remedy as to them.

5. To forbid any remedy as to past assessments declared by the act to be validated and confirmed.

The present assessment falls within the class last mentioned.

Prior to the enactment of the statute the existing remedy was by an action in equity to vacate the assessment or remove the cloud cast by it upon the title. The third section of the title forbids resort to an action in equity for such purpose, but only in respect to assessments thereafter made.

It is claimed that the new remedy applies to this case. But it is obvious that the legislature did not suppose any remedy was applicable or could be effectual to invalidate an assessment which it declared validated. It contemplated three classes of cases: 1. Past assessments in litigation. 2. Passed assessments not in litigation. 3. Future assessments. It preserved existing remedies as to the first class; provided a new remedy for the third class; and intended to validate and confirm the second class, and thereby dispense with the necessity of any remedy.

If the declared validation did, in fact, validate this assessment, then no remedy could avail, and this proceeding would fail. If it did not validate it, since the new remedy is applicable to future assessments, and the previous equitable remedy is neither prohibited as to past cases, nor expressly abolished, it still exists. It is simply a failure to apply the new, or supersede the old remedy as to past assessments not in litigation January 15, 1883. Where the right exists, if the remedy is omitted from the statute, it is left to the common law, or if that is inadequate, to equity. (Broom's Legal Maxims, 46; *Ewer* v. *Jones*, 2 Salk., 415; *Dudley* v. *Mayhew*, 3 N. Y., 9.)

We do not think the county judge had jurisdiction. But if we assume that the county judge had jurisdiction of the proceeding, the question is presented whether the first section of title 11 of the new charter, which provides: "And all assessments heretofore levied in the city of Albany, proceedings to vacate, review or set aside, which were not pending January 15, 1883, are hereby validated and confirmed," did validate the assessment in question. If the legislature had the power to validate and confirm this assessment, then the county judge could not subsequently vacate it. It would be like trying a prisoner for crime after he had been pardoned for its commission.

This assessment did not come before the county judge simply as the act of the municipal authorities. It came with the added sanction

of what purports to be legislative confirmation. Unless there is some constitutional restriction the validating section of the charter did validate this assessment. That the legislature could have originally authorized the proceedings which were taken in this case there is no doubt. (*Spencer* v. *Merchant*, 100 N. Y., 585; *Genet* v. *City of Brooklyn*, 99 id., 296; *Matter of Van Antwerp*, 56 id., 261.) The proceedings it could originally authorize it could subsequently ratify. (*People* v. *Turner*, 117 N. Y., 227; *Ensign* v. *Barse*, 107 id , 329.)

The limitation upon the legislative power to impose taxation is, that it shall pass no act which shall deprive any person of his property without due process of law. (*Remsen* v. *Wheeler*, 105 N. Y., 573; *Stuart* v. *Palmer*, 74 id., 183.) The individual has no constitutional right to be heard upon the question whether the law, either State or municipal, directing the imposition of a tax or local assessment, shall be enacted, but he has a right to be heard as to what proportion of the tax or assessment shall be imposed upon him or his property. (Id.) It is for the government to determine for what public purposes a tax shall be imposed, and upon what districts or persons; but every individual has a right to be heard with reference to the basis of his own contribution to the public burden; if based upon his property, what property; and its proportion by value, frontage, benefits received, or otherwise, to the other like property included within the assessment.

It, therefore, follows that it is no objection to the legislative validation of this assessment that the petition for the ordinance for the improvement was insufficiently signed. The legislature could have dispensed with the petition in the first instance, and, therefore, could validate an assessment based upon an imperfect one. In the town bonding cases for aid to railroads, it was held that the consent of the towns, or of any portion of the taxpayers thereof, was not a necessary condition precedent to the legislative power to authorize the issue of the bonds and to provide for their payment. Hence bonds issued without the consent required by the original statutes were validated. (*People* v. *Mitchell*, 35 N. Y., 551; *Town of Duanesburgh* v. *Jenkins*, 57 id., 177; *Williams* v. *Town of Duanesburgh*, 66 id., 129.)

Most of the objections above specified in the petition under which this proceeding was instituted were mere irregularities which it was competent for the legislature to cure. It is objected that if, under the statute then existing, the proper jurisdictional steps were not taken, the common council had no jurisdiction, and all subsequent proceedings were void. Such an objection would no doubt be valid if there were no validating statute. But the ample jurisdiction of the legislature over the whole subject of taxation enables it to make and impose, by its own statutory command, a complete assessment, save only in the respect of providing that the individual shall be heard by the proper authority with respect to its apportionment. (*Spencer* v. *Merchant, supra.*) The defect in the jurisdiction of the common council, if any, becomes immaterial when the legislature assumes, within its constitutional limitations, jurisdiction of the entire matter. It is for the same reason unnecessary to inquire whether chapter 77 of the Laws of 1870, under which the assessment was made was constitutional. An assault upon that act does not touch the validating act if it is free from the like objection.

The statute did not require that the work should be let to the lowest bidder. We do not hold that the legislature could ratify a tax or assessment which, in addition to the sums necessary for the public purpose, concealed a gratuity to individuals or a fraudulent increase for private or official plunder, for as to such excess the individual taxpayer would be deprived of his property without due process of law. But the evidence does not show that the sum proper to be levied was increased by such an unlawful increment. It does show that the contract was not awarded to the lowest bidder; that fact might create suspicion, but it is consistent also with honest action. Something more is needed to justify a finding of fraudulent addition.

The notice of the apportionment is criticised, not that it was deceptive or misleading, but that it was not published for fifteen full days in literal compliance with the terms of the statute. The legislature could have authorized its publication for less than fifteen days, and hence its ratification is effective. A sewer was embraced in the improvement. The charter did not require the same steps to be taken to confer jurisdiction to construct sewers as to pave streets. Its expense was apportioned at the same time as that for

the paving, etc., and the notice of the apportionment was " of the expense for paving, grading, draining, etc., South Pearl street," etc. We perceive no objection to the notice or apportionment, which is beyond the cure of the statute.

The order and decree must be reversed, with costs, and the pro-ceeding dismissed, with costs in the court below.

There are thirty-eight other cases dependent upon this one ; we reverse the orders and decree of the court below in each case and dismiss the proceeding, without costs.

MAYHAM, J., concurred.

LEARNED, P. J. :

Chapter 298, Laws of 1883, is the law establishing the city gov-ernment of Albany — in ordinary language, its charter. Title 11 of that section is entitled, " Reducing and vacating assessments." Its first section begins : " No assessment that may hereafter be levied shall be void, or shall be vacated by any court because of a failure on the part of the contractor to comply," etc. It then provides for proceedings by taxpayers and owners, during the progress of the work, to prevent payment to the contractor if his work is not prop-erly done. And it closes with the words : " And all assessments heretofore levied in the city of Albany, proceedings to vacate, review or set aside, which were not pending January 15, 1883, are hereby validated and confirmed." The act was passed April twenty-third.

The second section of the title provides that if, in the proceedings relative to any assessments in the city, any fraud or defect in the work or substantial error shall be alleged, the party aggrieved may apply to a judge of the Supreme Court or to the county judge to have the assessment vacated.

Section 3 provides that in such proceeding the assessment may be vacated. "And hereafter no suit or action in the nature of a bill in equity or otherwise shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title arising from any assessment hereafter made. * * *

Owners of property shall hereafter, in proceedings to reduce or vacate or stay payment of assessments, be confined to the form of proceeding in this title mentioned."

Section 1 of this title by its terms applies only to assessments made after the passage of the act.

Section 2, which authorizes proceedings of the kind taken in this case, does not expressly say to what assessments it is applicable.

But section 3, in its first sentence, declares what may be done in proceedings thus taken, and the same sentence contains the words above quoted, prohibiting thereafter any suit to vacate or to remove a cloud upon title arising from any assessment thereafter made. It is plain, then, that the prohibitory clause applies only to suits in respect to assessments thereafter to be made.

Since, then, the ground of the prohibition is the establishing of a new and peculiar remedy, it must be that the new and peculiar remedy applies to the cases as to which actions are prohibited, and not to any other.

To say that a part of a sentence applies to all cases and the conclusion only to cases thereafter arising is unreasonable, unless the language compels such a construction. And when the evident ground of the prohibition of actions is the substitution of a different mode of relief, it is obvious that the substituted relief and the prohibition are co-extensive. If the prohibition applies only to assessments thereafter made, so does the substituted remedy. Otherwise we have this condition, that as to assessments made before the act the aggrieved party may adopt either the remedy taken in this case or the action in equity or at law, as the case may be; while as to assessments made after the passage of the act he is confined to the remedy taken in this case. Then follows the other clause above quoted, that "owners of property shall thereafter," etc. Now, it is true that this clause does not not say "assessments hereafter made," but speaks generally of assessments. Still we have the word "hereafter," and we must construe the clause with reference to the preceding clauses of which it seems to be a repetition. The previous clause had prohibited an action to vacate an assessment or to remove a cloud where the assessment was thereafter made. This clause repeats the idea that owners of property shall hereafter be confined to the new proceeding; that is, in regard to assessments in respect to which actions are prohibited.

Now, if we turn back to section 1 we find that all assessments heretofore levied (with certain exceptions, immaterial to this case)

are validated and confirmed. Without inquiring, then, at the present time as to the legal effect of this clause, we can plainly see the intention of the legislature as to subsequent clauses. It cannot be that the legislature declared all assessments theretofore levied to be validated and confirmed, and then went on to establish a procedure for invalidating the very assessments which they had just declared to be valid. Even if that validating clause had no legal effect in its operations, still it would show that the subsequent clauses giving a mode for vacating assessments could not have been intended to apply to assessments already levied, which were declared to be validated and confirmed. Such a construction would make the legislature guilty of a palpable inconsistency in first declaring all previous assessments valid and confirmed, and then saying that owners of property may take certain specified proceedings to vacate these assessments. Evidently, then, the legislature could not have meant this.

All inconsistency is, however, removed when we construe the subsequent provisions to apply, like the first sentence in section 1, to assessments thereafter levied. Thus we shall also follow the ordinary rule that a retroactive effect is not to be given unless the language expressly requires it. (*Whitney* v. *Thomas*, 23 N. Y., 281.) In this view the present proceeding was unauthorized, as the assessment was levied before the passage of the act.

Further, as to the effect of the validating clause. In *Ensign* v. *Barse* (107 N. Y., 329), the very important and sensible distinction is stated between defects which are jurisdictional under the law as it stood when the proceeding was had, and those other defects which are so jurisdictional that the legislature could not have dispensed with what was lacking, and, therefore, could not cure the omission by subsequent legislation. For instance, a man's property cannot be taken away without due process of law, including notice to him. A proceeding, therefore, even in the mode provided by law, which was defective in this respect, could not be validated. To validate it would be to violate a constitutional right.

On the other hand, the legislature may authorize cities to improve streets, with or without petition of adjacent owners. The legislature may leave it in the absolute discretion of the city authorities, whether and how they shall grade, pave and sewer the streets. If the legislature has required the presentation of a petition of certain

persons before the city authorities shall do these acts, the legislature may say that these shall be valid, although such petition was not fully obtained.

In *People* v. *Turner* (117 N. Y., 227) the question was as to the title of land, and this question arose as to a title acquired under an assessment, it was held that a statute was valid which limited in effect the time within which the validity of the assessment sale could be questioned.

In *People ex rel. Hays* v. *Brooklyn* (71 N. Y., 495), the court concede the power of the legislature to legalize assessments, but say that the language of the section is too loose and indefinite to include those in question. The section under discussion provided for the reducing assessments and the confirmation of those reduced. And the court did not decide that an assessment could not be confirmed when the petition was insufficient.

In *Clementi* v. *Jackson* (92 N. Y., 591) it was held that the validating act only validated the taxes *sub modo*, and not the sales. *Lennon* v. *Mayor* (55 N. Y., 361) does not pass on the question involved here.

Admitting, then, for the purpose of the argument, that the petition in the present case was not sufficient to authorize the common council to act, is there any reason why the legislature may not declare the action of the common council to be, nevertheless, valid? This action of the common council is not judicial; it is executive or administrative. If the common council were a court to decide between the parties, and one party had not been heard, very possibly the legislature could not validate the act. But that is not this case. The restriction on the common council, that a petition with a certain number of signers must be presented, touches no constitutional right. It might have been dispensed with by the legislature. And if the legislature might have dispensed with that restriction originally, then they have the power to say that its omission shall not invalidate the act, unless it were required by the Constitution.

On the question of fraud the case of *Dederer* v. *Voorhies* (81 N. Y., 153) was decided on the peculiar language of the validating act, which only declared the assessment regular, notwithstanding any irregularity in form and substance. This was held not to include actual fraud. The language in this act has no limitation: "All

assessments are hereby validated and confirmed." If the act has any force, it must cover every objection, not constitutional, which could be made.

I concur, therefore, in the reversal of the orders as stated by my Brother LANDON in his opinion.

·Order and decree reversed, with costs; and proceedings dismissed, with costs in court below. In the thirty-eight cases dependent on this, order and decree of court below reversed in each case and proceedings dismissed, without costs.