MARGARETTA REMSEN et al., Appellants, v. GEORGE S. WHEELER et al., Respondents.

An assessment for water rates upon a vacant lot in the city of Brooklyn, made under the act in reference to the supply of said city with water (§ 24, chap. 396, Laws of 1859), where no notice was given to the owner of the levying of the assessment or opportunity for him to be heard, is illegal and void.

*It seems* that so much of said act as authorizes such an assessment is unconstitutional, in that it makes no provision for such notice.

| 105 | 573 |
| 120 | 366 |
| 105 | 573 |
| 121 | 686 |
| 105 | 573 |
| 122 | 538 |
| 123 | 381 |
| 105 | 573 |
| 124 | 517 |
| 105 | 573 |
| 126 | 164 |
| 105 | 573 |
| 128 | 370 |
| 129 | 312 |

Plaintiffs, being the owners of a tract of land in said city, which had been assessed for a number of years as vacant land for water rates under said act, and sold for non-payment of the assessments, entered into a contract to sell the same to L., who agreed to pay the purchase-price excepting thereout such sum or sums as L. should "pay in the discharge of taxes, water rates and assessments and sales for each of the same, in order to free said premises, or any portion thereof, from the liens of the same or the clouds thereon." L. thereafter, among other payments, with the assent of plaintiffs, paid to the register of arrears of said city the amount requisite to redeem said land from the sales for water rates and deducted the amount from the purchase-price. In an action to restrain the city from paying over to W., the purchaser at the assessment sale, the amount so paid, the city interposed no defense W. claimed that, although the sales were void, he was entitled, as against plaintiffs, to receive the money, as it did not belong to them but to L. who had paid it to discharge the assessments. *Held*, untenable ; as the money was paid by L. for plaintiffs' benefit, and they, by receiving the balance of the purchase-price and by bringing this action, ratified the payment.

Also, *held* (ANDREWS and FINCH, JJ., dissenting), that W. could not claim the money as a voluntary payment to the city for his benefit; that the city held it as a mere depositary, and until the payment became effectual by delivery to W. the doctrine of voluntary payment was not applicable in his behalf, and plaintiffs had the right to reclaim the money.

(Submitted March 14, 1887, decided June 7, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1884, which affirmed a judgment in favor of the defendant Wheeler, entered on a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*A. P. Bates* for appellants. The assessment should have been against the executors, naming them as trustees and executors of estate of Thomas Poole, deceased, otherwise it was void. (*Trowbridge v. Horan*, 78 N. Y 439 ; 2 R. S., 989, §§ 1, 2, 3 [7th ed.] ; *Chapman v. City of Brooklyn*, 40 N. Y. 372 ; *Crook v. Andrews*, id. 547 ; *Nat. B'k Chemung v. City Elmira*, 53 id. 49 , *Newell v. Wheeler*, 48 id.. 486 ; *Marsh*

v. *City of Brooklyn*, 59 id. 280 ; *Merritt* v. *Vil. of Portchester*, 71 id. 312.) When land is assessed against the occupant, it must name him as occupant. (*Dubois* v. *Webster*, 7 Hun, 371.) All of these water-rates are void upon the ground " that no notice was given to the owner of the fee at any stage of the levy-ing " of them. (*Stewart* v. *Palmer*, 74 N. Y. 183 ; *Lang* v. *Krendl*, 27 Hun, 66.) No notice can be implied. (74 N. Y. 186 ; *Guest* v. *City of Brooklyn*, 79 id. 624.) It does not follow from the assessments being void, plaintiffs, or even Lynch, made a voluntary payment and cannot recover. (*B'k of Comm.* v. *Mayor, etc.*, 43 N. Y. 188, 189 ; *Peyser* v. *Mayor, etc.*, 70 id. 497 ; *Breucher* v. *Vil. of Portchester*, 101 id. 240 ; *Scholey* v. *Mumford*, 60 id. 505.) Even Lynch was not by the order justified in paying this money, because the assessments being void, were no liens or clouds on the property. (*Chase* v. *Chase*, 5 N. Y. 373 ; *In re Jones*, 18 Hun, 329 ; *Clark* v. *Davenport*, 95 N. Y. 477.) A pay-ment ceases to be voluntary when a party is in a strait or under duress, and has to pay to carry out a contract or to save his property from loss. (*Breucher* v. *Vil. of Portchester*, 101 N. Y. 240 ; *Brundage* v. *Vil. of Portchester*, 31 Hun, 129 ; *Thorn* v. *Town New Lots*, 83 N. Y. 100.) When there is no jurisdiction of the assessing officers who impose a tax or assess-ment, money paid on same may be recovered back. (*Chap-man* v. *City of Brooklyn*, 40 N. Y. 380, 381 ; *Newman* v. *Sup'rs etc.*, 45 id. 686, 688 ; *Strusburgh* v. *Mayor, etc.*, 87 id. 452 ; *Horn* v. *Town New Lots*, 83 id. 100 ; *Breucher* v. *Vil. of Portchester*, 101 id. 244 ; *Jex* v. *Mayor, etc.*, 103 id. 536 ; *Brehm* v. *Mayor, etc*, 104 id. 186.) Whatever Lynch paid, presumably, he paid at his peril ; if these certificates did not represent liens, then Lynch had no right to pay, and deduct from the purchase-price. (*B'k of Comm.* v. *Mayor, etc.*, 43 N. Y. 188, 189 ; *Peyser* v. *Mayor, etc.*, 70 id. 497 ; *Breucher* v. *Vil. of Portchester*, 101 id. 240.)

*Jesse Johnson* for respondents. If the payments were vol-untary no action lies by nayone to recover them back.

(Fourth Abb. New Dig. 383, parts 113, 114, 115; *N. Y. C. & H. R. R. R. Co.,* v. *Marsh,* 12 N. Y. 308; *Wrendhull* v. *Carroll,* 16 Hun, 101; *Flower* v. *Lance,* 59 N. Y. 603, 610; *Swift* v. *Poughkeepsie,* 39 id. 511; *Bank* v. *Mayor, etc.,* 43 id. 184; 51 id. 638.) The payment having been made by Lynch, and he being now the owner of the land, he is the only party that can bring an action to cancel the lien and reclaim the money. (*A. D. Co.* v. *Mayor, etc.,* 53 N. Y. 64.) The plaintiffs could not have maintained an action to cancel these sales. (*Marsh* v. *Brooklyn,* 59 N. Y. 280.) Powers, being the lessee for the life of another, had an estate in these lands, amounting in dignity to a freehold. (*Dewey* v. *Osborn,* 4 Cow. 329, 338; *Leland* v. *Tonsey,* 6 Hill, 328, 332; *Van Rensselaer* v. *Radcliff,* 10 Wend. 639, 657; *Randall* v. *Sanders,* 23 Hun, 611, 615.) The legislature could legislate as to the rights of its municipal creation — the city of Brooklyn — but as to Wheeler, and his rights already accrued, it was entirely powerless. (*L. Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683.)

EARL, J. This action was brought to restrain the city of Brooklyn from paying over to the defendant Wheeler the sum of $1,986.05, and to compel it to pay the same to plaintiffs as the owner thereof.

The facts as alleged in the complaint, and found by the trial judge, are substantially as follows: The plaintiffs, four of whom are infants, were the owners of a tract of land in the city of Brooklyn which had been incumbered by taxes, assessments, water rates and certificates of tax sales to a large amount. In 1883, proceedings were instituted in the Supreme Court in behalf of the infant plaintiffs for the sale of a portion of the land in order to obtain money to pay under section 8, chapter 114 of the Laws of 1883, such taxes and assessments as could be paid thereunder to the city of Brooklyn on the balance of the land, and the result of such proceedings was a sale in which the adult plaintiffs joined to one Lynch in September, 1883. The order confirming the sale

and directing the deeds to be given, ordered the special guardian of the infant plaintiffs and the adult owners to receive the consideration money payable by Lynch as stipulated in his contract with them, " excepting thereout such sum or sums as said Lynch shall pay in the discharge of taxes, water rates and assessments and sales for each of the same in order to free said premises, or any portion thereof, from the liens of the same or the clouds thereon."

Lynch thereafter, among other payments, paid to the registrar of arrears of the city of Brooklyn, to redeem a portion of the land purchased by him from a sale thereof under assessments for flagging sidewalks, the sum of $1,171.20; and he also paid the sum of $814.85 to redeem land purchased by him from sales thereof for the water-rates assessed thereon from the years 1864 to 1870, both inclusive.  These payments by Lynch to the registrar of arrears were deducted out of the consideration money which by his contract he was to pay the plaintiffs for the land deeded to him.  The assessments for the water-rates were all levied against vacant lands, and no notice was given to the owners of the fee at any stage of the levying of such assessments.  The sums so paid to the city of Brooklyn are now held by it; but it claims no ownership of the same or any part thereof, or any lien thereon.  The defendant Wheeler claimed to hold the certificates of the tax sales and to be entitled to the money thus paid to the city of Brooklyn.

The plaintiffs claim that all the assessments were illegal and the sales invalid; and the defendant Wheeler claims that the various taxes, assessments and water rates and the tax sales were legal and valid, and that he was the owner and holder of the certificates and liens for assessments and water rates, and that the money paid to the city on account thereof was a voluntary payment and that the title to such money was in him.

The city interposed no answer and made no defense to the action.  The trial judge defeated the plaintiffs on the ground that the money was voluntarily paid to the city for the use and benefit of Wheeler and that the plaintiffs had no owner-

ship of the money or right to obtain or have the same, and upon the same ground substantially the judgment of the Special Term was affirmed by the General Term, as appears by the opinion there pronounced.

If these assessments for flagging and water-rates were legally imposed, and the sales under them valid, then the plaintiffs have no standing to maintain this action.

We agree with Judge Finch, for the reasons stated in his opinion, that it does not appear in this record that the assessments for sidewalk flagging were invalid; but we are of opinion that the assessments for water-rates were invalid and that the sales under the same were wholly unauthorized and illegal.

In the city of Brooklyn there was a system of water-works and a board of water commissioners, and section 24, chapter 396, of the Laws of 1859, provides as follows: "The said water-board shall, in every year, by resolution, fix the price which shall be assessed  *  *  *  upon every vacant lot situated upon any street, lane, alley or court through or into which distributing pipes shall have been laid until the bonds issued for the construction of the said works, with the interest thereon, shall have been paid. And thereafter they shall be adjusted so as to, with other provisions of this act for income from said works, meet the expense of repairs, maintenance and extension of said works.  *  *  *  Such sums so assessed, together with percentages for defaults,  *  *  *  shall be a lien upon the said premises respectively, and the same may be collected and enforced in the same manner as taxes are collected and enforced against land in said city." The lots of the plaintiffs were vacant, and hence were assessed and assessable for water rates under this section. As no use of the water could be made upon vacant lots, it must have been intended that whatever assessment was made upon them under this section was to be apportioned according to the value of the lots, or the benefits to them, or the cost of bringing the water to them, respectively. It cannot be supposed that it was the legislative intent or the practical opera-

tion of the section that a vacant lot worth $1,000 should be assessed for water rates as much as one worth $100,000. Unless this section requires the assessment for water rates upon vacant lots to be imposed and apportioned according to values, benefits or costs, it could not be justified as a scheme of taxation, and would be obnoxious to constitutional objections. Therefore, in reference to the imposition of these assessments, as in reference to the imposition of other assessments and taxes, the lot owners were entitled at some stage of the proceeding to a notice and an opportunity to be heard; and unless the law gave them the right to notice and an opportunity to be heard before the board which was authorized to impose the assessment, it was unconstitutional and void for the reason stated in *Stuart* v. *Palmer* (74 N. Y., 183).

Our attention has been called to no statute which required the water-board to give the lot owners any notice of the levying of these assessments or any opportunity to be heard in reference to them. No notice was in fact given, and the assessments were, therefore, wholly illegal and void and they did not become a lien upon the lots or a cloud upon their title. While it may be unfortunate for the city of Brooklyn to have its system for the imposition of assessments for water rates upon vacant lots thus condemned, it is better that it should be done now before greater complications and more mischief may come from such illegal assessments and void sales made for their enforcement. The rules laid down in *Stuart* v. *Palmer* are salutary and important, and for the protection of personal rights and private property must be enforced in all cases to which they are applicable.

It is claimed, however, on the part of the defendant Wheeler, that notwithstanding his tax certificates may be illegal and void, he is still entitled to receive this money from the city. He contends that the money paid to discharge the assessments for water-rates did not belong to these plaintiffs, but belonged to Lynch; that they have no concern with it, and that their remedy is against Lynch for the unpaid balance of the purchase-money. But the record shows that the

money was paid by Lynch for them. They consented that the requisite sum should be deducted from the consideration money payable to them, and applied upon these assessments, and after the payment was made, they allowed it and received the balance. By bringing this action they have ratified the payment so far as concerns Lynch, and upon the facts as they now appear they would certainly fail in an action against him to recover the same amount of money as unpaid purchase-money. So, even if Lynch, under the terms of the order made by the court, which is above set out, was not strictly authorized to make the payment, yet they allowed him to make it out of their money, and subsequently ratified his action. Wheeler cannot, therefore, dispute that this money was the money of the plaintiffs and was in effect paid by them.

The further point is made that this money to discharge the assessment was voluntarily paid to the city for the use and benefit of Wheeler, and that, therefore, the plaintiffs cannot reclaim it. But the money has not reached the hands of Wheeler. It is in the possession of the city, which is a mere depositary, and this action is brought to prevent its payment to Wheeler. Until the money reaches his hands and thus becomes his, it could not be deemed a voluntary payment to him. The city may be deemed to be the agent of both parties in reference to the money. It has reached its treasury through some mistake either on the part of the plaintiffs or of Lynch, and until the payment has become effectual by delivery to Wheeler, we do not think the doctrine of voluntary payment is applicable on his behalf, and the plaintiffs can reclaim it. The city does not set up voluntary payment to it, nor does it claim the money.

If it is deemed important that Lynch should be made a party to this action to protect his rights or to conclude him by any judgment which may be rendered therein, he can be made a party before the new trial which we are constrained to grant.

The judgment should be reversed, and a new trial granted costs to abide event.

FINCH, J. (dissenting). The plaintiffs, some of whom were infants, became the owners of a number of Brooklyn lots which were heavily incumbered by taxes, assessments, water rates and certificates of sale. The enactment of the law of 1883 permitted a redemption at very reduced expense, and the plaintiffs, desiring to avail themselves of the opportunity, determined to sell a portion of the lots to obtain the means of saving the remainder. Of course it was to be expected that any possible purchaser would stipulate to reserve from the purchase-price whatever sums would be necessary to clear and perfect his title beyond all doubt and question, and without peril of litigation over any apparent incumbrance. Such a purchaser the plaintiffs found in James D. Lynch, who agreed to pay for the property a certain sum, " excepting thereout such sum or sums as said Lynch shall pay in discharge of taxes, water rates and assessments and sales for each of the same, in order to free said premises or any portion thereof from the liens thereof or from clouds thereon." The adult plaintiffs agreed to this stipulation, and the proposed contract having been reported to the court in proceedings for the sale of the infant's interest, was deemed just and best for their welfare and a guardian appointed to transfer their title upon the terms of the contract. (Code Civil Pro. § 2358.) That contract signified the vendor's consent that Lynch might use so much of the purchase-money as was needed to pay off not only liens but " clouds ; " not merely valid taxes, but apparent liens ; not void on their face, but in truth invalid. To that extent his payments bound them exactly as if they had made them themselves, and if they were voluntary payments as to him they were equally so as to them. The lands had been sold to one Andrew S. Wheeler on the 9th of March, 1869, for $366.38 on an assessment levied for the expense of " flagging sidewalks on the west side of Fifth avenue." The case contains no evidence of any kind, and the findings do not tell us under what law the assessment was made, or whether the flagging charged for was wholly in front of plaintiffs' premises or an estimated part of a general expense. We are

told only that the taxes were "levied against George A. Powers as owner." The case does not show when the assessment was levied, nor that at that date George A. Powers was not the owner of some freehold estate or interest therein. The findings show that one Thomas Poole was seized in fee of the property in 1831 and died in that year leaving a will, by which he devised the premises to his executors in trust to permit his daughter Eliza to occupy them during her life, or in trust to rent the lands during the same period and pay the rents to her; and at her death the will gave the fee to her issue who might then be living. Eliza died in 1832 after all the assessments complained of were made, and either had a life estate which she could have transferred to George A. Powers, or the executors had one which they could have conveyed to him. In either event he would have been liable to assessment as "owner," and so we cannot say that the assessment was invalid for that reason, which is the only objection made. There may be others, but it is not our duty to search for them. The appellants have rested their case as to the alleged invalidity of this assessment upon the sole ground that it was made against one who was not at the time the owner. They have failed to prove the fact upon which the error claimed rests and we need go no further in the inquiry, and especially not when no adequate basis for such inquiry is furnished. The plaintiffs, therefore, made no case in any view of the subject as to the assessment for flagging. It may have been shown on the trial that George A. Powers had a lease for the life of Eliza and so an estate of inheritance or some conveyance of the remainder. The briefs indicate that some lease to him was proved and was made the subject of comment at General Term. The complaint charged that all the sales were illegal because "levied or charged to a person or persons as owner or owners of said premises who were not the owner or owners thereof nor the occupant thereof." There is not only no finding that George A. Powers was not owner, but none that he was not occupant, and the original charter of Brooklyn (Laws of 1854, p. 864, § 30), provides that land

·occupied by a person other than the owner, may be assessed in the name of the occupant. The finding that the water rates were levied against vacant property is a finding as to the form of the assesment, but is not a finding that the lots were actually vacant, and especially not that they were so ·when the flagging assessments were levied, the date of which is not shown. We think their invalidity was not established, .and the plaintiffs' action must fail as to them.

We come now to the water rates which are found to have been levied against "vacant property" and against George A. Powers as owner, against unknown owners, and against one Sammis as owner. We are referred in the appellents' brief ·to the Brooklyn water act as the only authority for these assessments. (Laws of 1859, chap. 396.) We are aware of no other. Three forms of water-rates seem to be contemplated and may be described as "regular rents," "special rates" and assessments against vacant property. (§§ 18, 24.) The first two are to be fixed by ordinance of the common ·council, but the third by the water commissioners. We must assume from the findings that the rates here assailed were levied against the property as vacant, and therefore by the water commissioners. Section 24 (*supra*), authorizes them to "fix the price which shall be assessed" "upon every vacant lot situated upon any street, lane, alley or court through or into which distributing pipes shall have been laid," and makes the "sums so assessed" and the "percentages for default" a lien upon the lands and to be enforced like other .assessments. No notice to anyone and no opportunity to be heard is given by the act, and it is wholly immaterial ·whether the water is used or not, and the plaintiffs contend that for such defect the act is unconstitutional and the water·· rates absolutely void. (*Stuart* v. *Palmer*, 74 N. Y. 183.) These water-rates, at least as to vacant property, are called assessments and are in their nature such, and it is difficult, if not impossible, to see how they can be sustained. But the question is a very important one and need not here be decided, since, if we concede. the appellants' claim in that respect, it

does not save their action. If the act, under which the water-rates were assessed, is unconstitutional, they were void on their face and did not even constitute a " cloud." Under his contract, therefore, Lynch had no authority to pay them out of the purchase-price, and when he did so, simply paid his own money to the city for purposes of his own with which the plaintiffs have no concern. Lynch remains liable on his contract for the balance unpaid and may be sued for it by the plaintiffs, but the money he needlessly paid was his own which he could use in that manner if he pleased. It was not plaintiffs' money in any sense, or withheld under the contract. If, therefore, the appellants are right as to the constitutional question, it still does not enable them to maintain this action. They sue to recover money which is not theirs and to remove a cloud which is not such. They are not helped by the finding that they have settled with Lynch and adopted and ratified his payments if that is what the finding means. The adult plaintiffs could bind themselves by such an agreement, but when they did, Lynch's payment to the city became theirs, the payment was voluntary and without the shadow of compulsion and cannot be recovered back. The infants, if they are not bound, have not lost their money. It remains in the hands of their vendee, who is bound, under his contract, to pay it to them as an unpaid part of the purchase-price.

The judgment should be affirmed, with costs.

RUGER, Ch. J., RAPALLO and PECKHAM, JJ., concur with EARL, J.; ANDREWS, J., concurs with FINCH, J.; DANFORTH, J., does not vote.

Judgment reversed.