# Cases

# FIFTH DEPARTMENT

AT

## GENERAL TERM,

### June, 1892.

THE PEOPLE OF THE STATE OF NEW YORK EX REL. WILLARD PULMAN *v.* CHARLES K. HENION AND OTHERS, AS WATER COMMISSIONERS OF CERTAIN TOWNS.

*Draining swamps — chapter 372 of the Laws of 1867 is unconstitutional — taking private property for private use — a "grievance day" is essential to a valid assessment — an objection to jurisdiction.*

In 1867 the legislature passed a special act relative to draining swamp lands in certain towns (chap. 372 of that year), which made no reference to the public health nor to any public purpose.

Sections 13 and 15 thereof authorized the taking, without the consent of the owners, of the lands through which the ditches were to pass.

Sections 2 to 7, inclusive, provided for an assessment, the creation of a lien and a sale "at public vendue" of the lands benefited, provided the assessment was not paid, but there was no provision for any "grievance" day upon which a person aggrieved might object to this assessment.

In a proceeding, instituted under the provisions of this act, it was:

*Held,* that the act was unconstitutional.

That it violated the constitutional principle that private property should not be taken for private purposes without the owner's consent.

That in failing to provide for a "grievance day" it violated the constitutional provision that no person shall be deprived of property without due process of law. (State Const., art. 1, § 6.)

That as the act was unconstitutional it afforded no basis for a proceeding against supervisors of towns, as *ex officio* water commissioners, to compel them to act under section 25 *et seq.* of chapter 557, Laws of 1890.

That an objection to jurisdiction may be taken for the first time upon an appeal.

CERTIORARI, upon the relation of Willard Pulman, directed to Charles K. Henion, Chester J. Hampton, Marvin Burroughs and William A. Stevenson, as water commissioners of the towns of Waterloo, Seneca Falls, Junius and Tyre, in the county of Seneca, to review their proceedings in denying the application of the relator for the repair of certain ditches in said towns.

*G. E. Zartman*, for the relator.

*C. A. Hawley*, for the defendants.

DWIGHT, P. J.:

The four defendants were, respectively, the supervisors and, *ex officio*, the "water commissioners" of the four towns mentioned in the proceeding. The latter office was created by chapter 557 of the Laws of 1890 (§ 25), and the proceedings here reviewed were taken in attempted compliance with the provisions of that act. Those proceedings were to procure the repair of certain ditches which had been constructed more than twenty years before, under the provisions of a special act of the legislature relating to the four towns mentioned therein. That act was chapter 372 of the Laws of 1867. It was entitled "An act to provide for draining certain swamp lands situated in the towns of Waterloo, Junius, Seneca Falls and Tyre, in the county of Seneca." It appointed three persons (named) commissioners for the purposes of the act (§ 1). It made it the duty of such commissioners to cause a survey and map of the swamp and adjacent wet lands to be drained, and of the tracts of land to be benefited by such drainage (§ 2); to estimate the cost of doing the work, and to assess and apportion the same (with their fees and those of the surveyor, and other expenses) upon the owners of the lands to be benefited, in proportion to the benefit which, in the judgment of the commissioners, the owners should derive from the work contemplated (§ 3); to make and subscribe a statement of the assessments so made, containing the names of the persons and a description of the lands assessed, and the amount of each assessment, and file such map and statement in the clerk's office of the county; and it provided that the assessments so made should be a lien upon the lands upon which they were respectively assessed (§ 4). It required the commissioners, upon the completion of such assess-

ments, to cause a notice containing an abstract thereof, and the names of the persons assessed, to be published in two newspapers, appointing a time and place at which they, or one of them, would attend *to receive such assessments ;* and that unless such assessments should be paid at the time and place so appointed, they would *then and there* proceed to sell the lands, in respect to which such assessments were made, at public vendue to the highest bidder (§ 5). It provided for a service of the notice above described upon the respective owners of the lands assessed, personally, or by leaving at his place of residence fourteen days, or by mail twenty-eight days, before such day of sale (§ 6). It also made it the duty of the commissioners, or one of them, to attend at the time and place specified in the notice to receive payment of the assessments, and to proceed then and there to sell any of the lands so assessed upon which the assessments were not then and there paid (§ 7).

By section 13 of the act the commissioners were empowered " to enter upon any lands in or about said swamp or the Black Brook outlet of said swamp for the purposes contemplated by this act ; " that is, to construct, maintain and repair ditches thereon ; and by section 15 it was provided that " any person who shall dam up, obstruct or in any way impair any ditch, drain or sluice-way made and opened in pursuance of this act * * * shall be liable to pay the persons owning or possessing any of said lands, so as aforesaid assessed for said work herein provided for, double the damages that shall be assessed by the jury for such injury."

It was upon this extraordinary statute that the proceedings here under review were finally based. Because, though, as we have said, the method of procedure was that prescribed by the act of 1890, the reference in that act, under which jurisdiction of this proceeding is claimed for the supervisors, commissioners, is to the special act of 1867. It is found in the first of the sections added by the act of 1890 to the act of 1869 (Laws of 1869, chap 888), which, in turn, amended the provisions of the Revised Statutes relating to the drainage of swamp lands. That section reads as follows : " Sec. 25. The supervisor of each town in the State shall be the water commissioner of his town, and as such shall have charge and supervision of all the ditches and channels for the passage of water which have been or

shall hereafter be constructed or improved for the purpose of drain-ing any swamp, bog, meadow or other low and wet land in said town, pursuant to said act hereby amended, *or any special act of the Legis-lature therefor.*" And subsequent sections of the act of 1890 con-fer upon the commissioner, thus created, jurisdiction of proceedings for the repairs of "any such ditch or channel," only; that is, of any ditch or channel constructed under the act of 1869 (*supra*), or any special act of the legislature therefor.

As we have seen, the ditches in question in this proceeding were constructed under the supposed authority only of the special act of 1867. If, therefore, that act was, for any reason, invalid and void, the ditches in question are not brought within the category of the structures mentioned in the act of 1890, and the commissioners thereby created have no jurisdiction of the proceedings for their repair.

It seems very plain that the act of 1867, above abstracted, was and is void as being in violation of two fundamental principles of law, one of which is clearly implied and the other expressly formulated in the Constitution of this State. The first is the principle that private property cannot be taken for private use with-out the consent of the owner; the second that no person shall be deprived of life, liberty *or property* without due process of law.

The first of these principles is very fully discussed and illustrated by Judge CHARLES MASON in the case of *White* v. *White* (5 Barb., 474) In his opinion he quotes the language of Judge STORY in *Wilkerson* v. *Leland* (2 Peters, 657), substantially to the effect that this principle is a fundamental maxim of free government, resting in first principles, and not dependent upon express constitutional inhibition. He observes that an exception to the rule has been made by express provision of the latest Constitution of this State, in favor of private roads, when the necessity therefor and the amount of damages caused thereby shall have been first determined by a jury of freeholders. (Const., art. 1, § 7.) But he says the framers of this Constitution "have not extended the right to take private property for private use beyond the case of opening private roads; and from the very fact that they have not, I think the inference is irresistible that they did not intend it should be.".

That the act of 1867 does violence to this principle seems very

apparent from the abstract given above. Sections 13 and 15 of the act (*supra*), plainly authorize the taking of private property, viz., the lands through which the ditches are to pass without the consent of the owner; and that, not only without the pretense of a public use, but expressly for the benefit of those other persons whose lands are to be improved by the work to be done. There is in the entire act no allusion to the subject of the public health, nor to any other public purpose, but there is, on the other hand. constant reference to the owners of the lands drained, as the persons to be benefited thereby. It was for want of any reference to a public use that the constitutionality of the provisions of the Revised Statutes relating to the same subject was questioned previous to 1869; and it was, no doubt, that defect which led to the amendment of that year. (*White* v. *White, supra,* at page 483; see, also, *In re Draining Swamps,* 5 Hun, 116; *In re Ryers,* 72 N. Y., 1.)

Equally clear is it, we think, that the act of 1867 does violence to the express provision of the Constitution, that no person shall be deprived of property without due process of law. (Const., art. 1, § 6.) The provisions of the act which are repugnant to this provision of the Constitution are found in sections 2 to 7, inclusive, and are those which provide for assessing, creating a lien upon and selling, " at public vendue," the lands found by the commissioners likely to be improved by the drainage proposed, without any opportunity being given to the owners of the lands to object to the assessments made, either on the ground that the lands will not be benefited, or that the assessments are unequal and unjust. The provisions of the act in question in this respect are very extraordinary. It provides no grievance day whatever. The notice to the owners of lands assessed is not of a day when the assessment will be reviewed, but of the day upon which it must be paid, or the land will be sold " then and there;" and this is the first intimation the owner has had of any proceeding which threatens his right of property.

It is well settled that a " grievance day " — an opportunity to be heard in respect to the justice and correctness of a proposed assessment — is a necessary part of the due process of law for the levying of assessments on property in this State for any purpose. (*Stuart* v. *Palmer,* 74 N. Y., 183, 188; *Remsen* v. *Wheeler,* 105 id., 573; *McLaughlin* v. *Miller,* 124 id., 510; *In the Matter of Union*

*College*, 41 N. Y. St. Rep., 640.)   In the first of the cases cited the rule is distinctly declared that "a law imposing an assessment for a local improvement, without notice to and a hearing, or an opportunity to be heard on the part of the owner of the property to be assessed, has the effect to deprive him of his property without due process of law, and is unconstitutional," and the doctrine is upheld in all the other cases.

In the two respects considered, therefore, the act of 1867 was clearly unconstitutional and void.   Being so, it afforded no basis for the jurisdiction, sought to be conferred upon the commissioners created by the act of 1890, over the ditches constructed under the former act.   Those commissioners were, therefore, without jurisdiction of the proceeding here under review; all their acts in entertaining such proceeding were void; their refusal to make the order and determination asked for by the relator was clearly correct, and the ruling must now be sustained, even though the objection to the jurisdiction was not taken during the proceeding, but for the first time on the review.   (*Burk* v. *Ayers*, 19 Hun, 24.)

The determination of the commissioners should be confirmed.

Macomber and Lewis, JJ., concurred.

Order and determination of the commissioners confirmed, with costs of this appeal to the defendants.