WILKINS, Drainage Com'r, v. HILLMAN *et al.*, County Com'rs
and Ex Officio Com'rs.

No. 6203.   Opinion Filed December 22, 1914.

Rehearing Denied January 26, 1915.

(145 Pac. 1111.)

1. **DRAINS—Special Assessments—Validity.** In the construction of a drainage ditch, special assessments under the Constitution and laws of this state can be made only for corresponding specific benefits conferred.

2. **COUNTIES—Funds—Drains—Assessment of Benefits.** Where substantial benefits are assessed to a county on account of drainage to the public highways, that part of the expense of constructing the drainage ditch apportioned to the county, corresponding with the amount of benefits conferred, must be paid by the county out of funds raised by general taxation.

3. **DRAINS—Assessments—Drainage of Highways.** That part of the expense in constructing a drainage ditch assessed against a county for benefits accruing to such county by virtue of drainage of the public highways cannot legally be paid out of funds collected by special assessments made against the property owners in said drainage district.

4. **EMINENT DOMAIN—Drainage of Highways—Assessments.** The payment of that part of the expense in constructing a drainage ditch, assessed to the county for benefits to the public highways out of funds collected by special assessments levied upon the individual property located in such drainage district, would be taking private property for public use, without just compensation and violative of the Constitution and laws of this state.

5. **DRAINS—Assessments—Bridges—Counties.** The viewers and appraisers assessed benefits to Lincoln county by virtue of the drainage of the public highways in the sum of $134,500, and assessed damages in favor of said county in the sum of $81,930, the cost of erecting 48 steel bridges across said drainage ditch on the public highway. Said assessment was confirmed by the county commissioners. No exceptions were filed, or appeal taken therefrom. The county commissioners refused to erect said bridges, or to pay the amount of benefits assessed to said county. Plaintiffs, who are certain property owners in said district, filed their petition in the district court against the county commis-

sioners, and said commissioners, as ex officio drainage commissioners, and against plaintiff in error as drainage commissioner, paying for a writ of mandamus,' requiring them to meet and proceed to let the contract for the erection of said bridges. The court found in favor of the county commissioners, and issued a peremptory writ of mandamus requiring the commissioners, as ex officio, drainage commissioners, and the drainage commissioner to meet and proceed to let the contract for the construction of said bridges. Held, error.

(Syllabus by the Court.)

*Error from District Court, Lincoln County;*

*Roy Hoffman, Judge.*

Petition by J. W. Cherry and others against Ed Hillman and others, County Commissioners and *Ex Officio* Commissioners of Deep Fork Drainage District No. 1, Lincoln county, and from the judgment Homer J. Wilkins, Drainage Commissioner, brings error. Reversed, with directions.

*Embry & Hastings,* for plaintiff in error.

*Streeter Speakman,* Co. Atty., and *F .A. Rittenhouse,* for defendants in error.

RIDDLE, J. On the 7th day of August, 1909, certain property owners residing in Lincoln county filed their petition in the manner provided by law with the board of county commissioners, for the purpose of creating a drainage district within said county. The petition was signed by the requisite number of property owners necessary to confer jurisdiction upon the county commissioners to proceed in the matter. Various proceedings were had, and there is no question raised as to the regularity of the proceedings in the organization of the drainage district and in letting the contract for the construction of the ditch. On February 26, 1914, J. W. Cherry, D. J. Norton, E. W. Hoyt, A. E. Patrick, and D. W. Collier, property owners in said district, filed their petition in the district court of Lincoln county against Ed Hillman, J: F. Collier, and R. A. Morrow, county commissioners

and *ex officio* commissioners of Deep Fork Drainage District No. 1, of Lincoln county, and Homer J. Wilkins, as drainage commissioner. Plaintiffs recite the various steps taken in the organization of said drainage district, and the letting of the contract to construct the ditch; that they are property owners, affected by such proceeding. They further allege that the viewers and appraisers appointed to view and appraise said property reported the necessity of building 48 steel bridges across said drainage ditch on the public highways, and designated the localities where said bridges were to be constructed; that said viewers and appraisers estimated the cost of construction of said bridges in the sum of $81,930. Plaintiffs further allege that said viewers and appraisers assessed the benefit to Lincoln county in the sum of $134,550. They allege the progress made in the construction of said ditch and the necessity of building said bridges, and the refusal of said defendants, as county commissioners, or either as *ex officio* drainage commissioners of said drainage district, to construct said bridges, as was their duty to so do, although often requested. It is further alleged, without the construction of said bridges, it will be impossible for plaintiffs to cross said ditch, and many of the farms situated in said district will be cut in two by said ditch, and the owners thereof will not have access to portions of their farms; that they have no adequate remedy at law, and they pray for a writ of mandamus, compelling defendants to meet and proceed to let the contract for the construction of said bridges. An alternative writ of mandamus was issued, setting up substantially the foregoing facts.

Plaintiff in error, Homes J. Wilkins, as drainage commissioner, filed his answer and return to the alternative writ, wherein he sets out the various steps taken by the county commissioners in the organization of said drainage district and the report of the viewers and appraisers and the confirmation thereof by said commissioners. He avers that the viewers and appraisers found the benefits to Lincoln county in the sum of $134,550, and the damage

in favor of Lincoln county for the construction of said 48 steel bridges in the sum of $81,930. After legal notice by publication, a hearing upon said report was had, and the same was by the commissioners duly confirmed, and no appeal was taken therefrom by the county; and the action of the viewers and the order confirming same have become final. He also makes a part of his answer the order of the board of county commissioners, of date, November, 1910, as follows:

"Chandler, Oklahoma. Nov. 19, 1910. The board met pursuant to recess, all members present; journal of previous meeting read and approved. It is ordered by the board that, whereas, by mutual mistake, the assessment for damages in favor of Lincoln county in the Deep Fork Drainage District No. 1 (by reason of the county being required to construct bridges), not having heretofore been spread of record, the county clerk be and he is hereby instructed to record in the drainage record of said district the assessment hereby made in favor of Lincoln county, on account of the construction of said bridges, the sum of $81,930, which said sum is hereby declared to be the assessment of damages due said county, as aforesaid. The board then took a recess until Nov. 28, 1910.

"Approved this 28th day of November, 1910.

"Geo. F. Clark, Chairman.

"Attest: J. E. Rea, County Clerk."

He further alleges:

"And by such action the said board of county commissioners elected that Lincoln county would construct said bridges and offset the damages on account thereof, to wit, the sum of $81,930; * * * that the construction of said bridges is not a legal charge against said drainage district."

He further sets out resolution of the board of county commissioners of July 3, 1911, wherein the board recognizes the validity of the assessment of benefits made to Lincoln county and the provision made by said resolution toward the payment of said

assessment, and the further resolution of said board, providing for the issuance of negotiable special assessment warrants with coupons attached in the aggregate sum of $134,550, to provide the ready funds to pay said sum.. He alleges that they refuse to issue said warrants or to build said bridges. The county commissioners filed a demurrer to the petition and alternative writ of mandamus. Plaintiffs filed a demurrer to the answer and return of the drainage commissioner. Upon a hearing of the issues thus raised, the court sustained each of said demurrers; and a peremptory writ of mandamus was issued against the county commissioners, as *ex officio* commissioners of Deep Fork Drainage District No. 1, and plaintiff in error, as drainage commissioner, requiring them to meet and proceed to let the contract for the construction of said 48 bridges. From this judgment plaintiff in error prosecutes error to this court.

There is no question raised on this appeal relative to the necessity of the construction of said bridges, but all parties seem to agree that they are indispensable. The sole question for determination is as to whether said bridges should be constructed by the county commissioners at the expense of and in behalf of the county, or by the drainage commissioners and at the expense of said district. By stipulation filed in this court, the case-made has been amended by attaching a true transcript of all the proceedings had before the county commissioners relative to said drainage district. We presume this is done in order that the court may determine the question on the merits and finally fix the liability of building these bridges. A proper determination of the question presented requires the consideration and construction of several provisions of the act of the Legislature of 1907-08, and the amendments thereto, commonly known as the Drainage Act. There is some contention as to whether the act of the commissioners was performed as commissioners of the drainage district, or whether they were acting the the capacity of county commissioners. The law is anything but clear as to when they shall act as county

commissioners, or when they shall act as *ex officio* drainage commissioners. The law begins by providing that the proceedings shall be initiated by filing a petition with the county commissioners, and section 3045, Comp. Laws 1909, in part provides: "The term 'commissioners' as used in this act, shall mean the board of county commissioners." There is no provision anywhere designating said commissioners "drainage commissioners," or "*ex officio* drainage commissioners." From an examination of the record, it seems that all the proceedings had before the commissioners were before them as county commissioners, and that all resolutions passed and orders made were in their capacity as county commissioners. In our opiinon, it is a matter of minor importance whether or not they were acting in the capacity of county commissioners, or drainage commissioners. It is unnecessary to determine in what capacity they performed their duties, except to the extent and for the purpose of determining the validity of their acts. At common law, the obligation to maintain and repair public highways and bridges rested upon the county. 1 Blackst. Comm. 357. It cannot be doubted that primarily the duty of building bridges of the character and dimensions of the bridges required to be built across said drainage ditch in question upon the public highways is upon the county commissioners under section 7581 and 7609, Rev. Laws 1910, which sections read:

"7581. All bridges, culverts and roads shall be at least fourteen feet wide, and all bridges and culverts not more than twenty feet in length shall be under the control and supervision of the board of highway commissioners of such township and the road supervisor in whose district such bridge or culvert is situated, and all bridges more than twenty feet long shall be under the control and supervision of the board of county commissioners. Said bridges to be built by the county commissioners at such places as may be necessary for the public convenience. In addition to the compensation already allowed by law, the county commissioners shall receive three dollars for each day actually and necessarily spent in overseeing bridge work: Provided, that no

commissioner shall receive pay for such work for more than sixty days in any one year."

"7609. The board of county commissioners shall provide all roads improved, under the provisions of this article, with suitable bridges of a permanent and substantial character and shall keep and maintain same in repairs."

It is the contention of plaintiff in error that under section 3069, Comp. Laws 1909, it is likewise the duty of the county commissioners to construct the bridges in question. This section provides:

"The commissioners may, when the same is necessary for public health, convenience and welfare, cause to be constructed or enlarged, any bridge or culvert made necessary by the crossing of any drain constructed under the provisions of this act: Provided, however, that when such bridge or culvert shall belong to any corporation other than the county, the county clerk shall give such corporation notice by delivering to its agent the order of the commissioners declaring the necessity for constructing or enlarging such bridge or culvert, and a failure to construct or enlarge such bridge or culvert within the time specified, shall be deemed as a refusal to do said work, and thereon the commissioners shall proceed to let the work of constructing or enlarging the same and assess the corporation with the cost thereof, and the county clerk shall place such assessment on the tax book against said corporation    *    *    *    to be collected as taxes. Before the commissioners shall let such work they shall give to the agent of the said corporation at least twenty days' actual notice of the time and place of letting such work."

Construing section 3069, *supra,* as a whole and in connection with sections 7581 and 7609, Rev. Laws 1910, *supra,* relating to the same subject, we are clearly of the opinion that the commissioners referred to therein are the county commissioners, and that the bridges provided for are to be constructed on behalf of and at the expense of the county, except where benefits are assessed to a county, it may offset the amount due for benefits by the cost of erecting necessary bridges. This section clearly contemplated

that the bridges, other than are owned by any private corporation, shall belong to the county. Also, this section provides only for the construction or repair of such bridges, when it is made necessary for the public health, convenience, and welfare. There is no reference made in this section to the repair or construction of bridges when necessary for the drainage district or for the convenience of the people in said district, but only when necessary for the general public health, convenience, and welfare. In other words, this section contemplates that said bridges are to be built for the use and benefit of the general public, in that all public bridges become a part of the public highways, and the public highways are in the exclusive charge and control of the county officials and must be erected by general tax; and this section puts the burden of constructing such bridges upon the county.

We are also of the opinion that the bridges referred to in this section are a different class from those referred to in section 3050, Comp. Laws 1909. Taking the context of said section 3050, it is reasonably clear that the bridges referred to there are mainly for the use and benefit of the owners of the lands situated in said district. The language used (referring to the viewers) is:

"They shall specify the manner and time in which the improvements shall be made and completed, the number of floodgates, waterways, farm crossings, bridges, and the dimensions thereof, and note the county and township lines and railroad crossings."

In other words, this language, properly construed, would mean the number of floodgates, waterways, farm crossings, and "farm bridges" and dimensions thereof. This section clearly contemplates that these are improvements to be constructed at the expense of the drainage district, and to become a part of the drainage system, and of special benefit to each landowner within the district, and are not public utilities. The drainage law does not provide anywhere the character, material, size in length or width, nor the location of such bridges. The language of the

court in the case of *Rigney v. Fischer,* 113 Ind. 313, 15 N. E. 594, is applicable here:

"Without further extending this opinion, our conclusion is that appellee, as the drainage commissioner, has no authority to determine the necessity for the bridge, nor the sort of bridge, if one is necessary, that should be built, and has no fund that he can use in the erection of the bridge; in short, that he has no authority to erect the bridge. Those questions must now be settled, and the bridge be built, if built at all, by some person or body authorized to do so by the statutes."

It is also his contention that the viewers and appraisers assessed benefits to be derived from the construction of the ditch against Lincoln county in the sum of $134,550, and damages by reason of the construction of these bridges in the sum of $81,930, and that said county, through its officials, elected to build these bridges and offset the amount of expense against the amount of benefits assessed, and that said county is now liable under the law by reason of such proceedings and judgment of the commissioners. The jurisdiction and authority conferred upon the county commissioners in the organization and proceedings in the construction of a drainage ditch are very broad and sweeping. There can be no question about the power to assess benefits to the county wherein the viewers and appraisers find that the county will be benefited by reason of the construction of such ditch and the draining of public highways. Part of section 3046, Comp. Laws 1909, provides:

"The benefits to the county as a body politic and which might be assessed under this act against the county where improvements are formed, in districts formed wholly within any county, shall be prorated between the counties in their proportion to the benefits derived to the counties respectively and shall be paid from the public funds of each such county."

And again, section 3056, *Id.,* provides:

"When any drain established under the provisions of this act,

drains, either in whole or in part, or benefits any *public* or corporate road or railroad, the viewers shall apportion to the *county* or *state road,* or if a corporate road or railroad, to the person or company owning, operating or controlling the same, the same proportion of the cost of location and construction of the improvement in proportion to the benefits received as to private individuals." Italics ours.)

It will be seen that the commissioners in their supervisory control over the acts of the viewers and appraisers had the same jurisdiction and authority to assess and approve benefits to the county as to an individual; and when the assessment was made and confirmed, if no appeal was taken within 20 days, the order confirming such assessment became final, equivalent to a judgment of such board, and would not be subject to a collateral attack. Certain powers conferred upon said commissioners are *quasi* judicial. The determination of the viewers, when affirmed by the county commissioners, is a *quasi* judicial proceeding and, unless appealed from, is final. In the case of *Sears v. Street Com'rs,* 173 Mass. 350, 53 N. E. 876, it is said:

"It is well established that the determination of the amount of taxes for special benefits to real estate by any tribunal to which the Legislature delegates the power is a *quasi* judicial proceeding which cannot take final effect unless persons to be assessed have an opportunity to be heard. *New London N. R. Co. v. Boston & A. R. Co.,* 102 Mass. 386; *Parsons v. District of Columbia,* 170 U. S. 45, 52, 54, 18 Sup. Ct. 521 [42 L. Ed. 943]; *Hagar v. Reclamation Dist.,* 111 U. S. 701-709, 4 Sup. Ct. 663 [28 L. Ed. 569]; *Irrigation Dist. v. Bradley,* 164 U. S. 112-175, 17 Sup. Ct. 56 [41 L. Ed. 369]; *Stuart v. Palmer,* 74 N. Y. 189 [30 Am. Rep. 289]; *Remsen v. Wheeler,* 105 N. Y. 573 [12 N. E. 564]."

Said commissioners are given exclusive jurisdiction to hear and determine all contests and objections to the creation of such district, and all matters pertaining to same, and have exclusive jurisdiction in all subsequent proceedings, except such as is conferred upon the drainage commissioner after the completion of the

ditch. They are given power to adjourn the hearing on any matter from day to day, and all judgments rendered by said commissioners in relation thereto are final, except when appealed from to the district court.

There is no claim that the county failed to receive sufficient notice of all proceedings had, or that there are any defects by reason thereof. Under the broad powers vested in the commissioners, we are of the opinion that their acts in approving the assessment of benefits to the county and in assessing damages in favor of the county to the amount of the cost of the bridges, and the resolution on the 19th day of November, 1910, *supra,* are valid and binding upon the county. The resolution, fairly construed, was an election on the part of the county to offset the benefits assessed to the amount of the cost price of the bridges. There was no appeal taken from the action of the commissioners in any of thtse matters, and such action must be held to be conclusive on the county. If the judgments of the commissioners are not conclusive on the county, then they are not conclusive on any of the other parties, in that the commissioners had the same jurisdiction over the county as it had over the other parties before them, and was specifically authorized to make the assessments of benefits and damages to the same extent as if all were individuals. The county was authorized to elect, the same as an individual, if it would offset the damages assessed against the benefits, and, having elected, is now estopped to revoke its action in such matter to the prejudice of the drainage district and others interested.

Section 17 of the act, being section 2981, Rev. Laws 1910, in part provides:

"Should any person interested in land appropriated or damaged by the proposed drain or other improvements fail to file their written exceptions to the report of the viewers as hereinafter provided, they shall be deemed to have acquiesced in any such

462        SUPREME COURT OF OKLAHOMA.

Wilkins, Drainage Com'r, v. Hillman et al. Com'rs.

award and shall forever be estopped from prosecuting any action
to. vacate or avoid the same."

And section 3057, Comp. Laws 1909, in regard to appeals,
provides:

"Any person aggrieved may appeal from the order of the
commissioners, and upon such appeal there may be determined
either or any of the following questions: First, whether just
compensation has been allowed for property appropriated, and
second, whether proper damages have been allowed for property
prejudicially affected by the improvements; third, and whether
the property for which an appeal is prayed: has been assessed
more than it will be benefited, or more than its proportionate
share of the cost of the improvements."

Section 3053, *Id.*, in part provides:

"If the commissioners shall find that due notice has been
given, they shall examine the report of the surveyor and viewers,
and if it shall appear that the assessments of the cost of location
and construction of damages and benefits to each tract are cor-
rect, and that the apportionment of the costs of location and con-
struction, is in proportion to the benefits and damages of eacn
tract, fair and just, the same shall be approved and confirmed. .
*   *   *"

Then it is provided in said section that in case the commis-
sioners find that the improvements so reported are unjust or
erroneous, they may, by an order of record, amend the report
upon evidence.  The subject-matter certainly was within the auth-
ority of the commissioners, and the law specifically gives to the
commissioners authority to adjourn from day to day on the hear-
ing of reports and exceptions, and to make such orders as may be
necessary in the letting of the contract and the assessment of dam-
ages and benefits.  The statute also specifically authorizes the
offsetting of benefits by damages assessed, and this applies as well
to the county as to individuals, and in our opinion, the commis-
sioners had the authority to confirm and approve the finding of
the viewers in assessing benefits against the county in the amount

found, and also in assessing the damage for the construction of the bridges, and that the county had a right, acting through its commissioners, to elect whether or not it would construct said bridges. It having elected, its action should be held final.

The contention that counsel make to the effect that it was the duty of the drainage district, under the common law, to construct these bridges, is not tenable. We recognize the common-law rule, to the effect that where a corporation or other person or company crosses a public highway, it must be done with as little damage to the highway as possible, and that it is the legal duty of such person or company to construct bridges or culverts and make such other repairs as may be necessary to replace said highway in a reasonably safe condition at the expense of such person crossing same. Whether or not this rule, under any circumstances, would apply to a drainage district, constructed under the statute, is not necessary to decide; but we do hold it has no application to the case at bar. If all the parties affected, or who expected to be benefited by the cutting of a drainage ditch, should be directly instrumental in initiating proceedings for that purpose and proceed to organize and construct such a ditch, without reference to any benefits to the public generally, and should construct said ditch across highways, probably in such an instance such persons, corporation, or drainage district might be required to repair the highways so damaged in crossing. It is clear, under the drainage laws and the Constitution, no assessments can be made upon any land on any principle other than that of corresponding benefits received. The undertaking here was a gigantic one, of vast magnitude, and from the great area of country it will drain, we might be justified in inferring that it will be of immeasurable benefit to the general public, even if there were no finding to that effect in the record. One of the prerequisites to the right of making this improvement was a finding that it would be necessary for the "public health, convenience, and welfare" of all, and that it would not be of special benefit to any particular

class, or specific property. This alone should be sufficient reason to make the common-law rule inapplicable. No doubt the larger per cent. of the property owners, without their consent, are required to contribute to pay the expense of such improvements, on the theory that they are public utilities and beneficial to the public health, etc., and for specific benefits received equal to the assessments. Under our Constitution, arbitrary assessments can only be made in payment of expense of constructing a drainage ditch when the benefits received are in proportion to the assessments made, and that such improvement is a public utility, or is made in the interest of public health. When such improvements are made in the interest of the public welfare, and without regard to special benefits conferred, the property of citizens can be taken only after just compensation paid therefor, and the expense of such improvements must be paid by a general tax upon all people affected. *People ex rel. Coon Run Drainage & Levee Dist. v. Nortrup*, 232 Ill. 303, 83 N. E. 843; *Cuming County v. Bancroft Drainage Dist. et al.*, 90 Neb. 81, 132 N. W. 927. It is shown from the record and is conclusive, so far as this proceeding is concerned, that the county received benefits to the public roads of $134,550 by reason of this contemplated improvement. To this extent, the property owners within the district would receive no direct benefit to their property. In other words, every other resident of the county will receive the same benefit by the drainage of the public roads, as will the property owners living within the district; and it would be neither right nor legal that the few residing within the district should be conpelled to pay the expense for benefits received by the public generally. The bridges required are for the benefit of the general public, and special assessments cannot legally be made to pay the expense of constructing same. The expense of building said bridges is a subject of general taxation. *Sears v. Street Com'rs, supra; Hammett v. Philadelphia*, 65 Pa. 146, 3 Am. Rep. 615; *Washington Ave., In re*, 69 Pa. 352, 8 Am. Rep. 255; *Appeal of City of Williamsport*, 187 Pa. 565, 41 Atl.

476; *Dietz v. City of Neenah,* 91 Wis. 422, 64 N. W. 299, 65 N. W. 500; *Dyar v. Farmington Village Corp.,* 70 Me. 527; *Hanscom v. City of Omaha,* 11 Neb. 37, 7 N. W. 739; *Erie v. Russell,* 148 Pa. 384, 23 Atl. 1102. To hold otherwise would be in direct violation of section 24, article 2, of the Constitution, in that it would be taking private property for a public use, to the extent, at least, of the amount of the assessments of benefits to the public highways, amounting approximately to one-sixth of the total value of the improvements. ·

Page and Jones on Taxation by Assessment, sec. 449, lay down the following rule:

"Authority to assess for the construction of a system of drains does not include authority to assess for the construction of a bridge at a point where a large drain crosses a highway."

In 14 Cyc. 1025, it is stated:

"Under the various constitutional provisions and acts conferring power upon local authorities to establish drains, it must be shown that such drain is necessary and conducive to public health, convenience, or welfare, or of public benefit or utility" (citing cases from Indiana, Michigan, Ohio, Oregon, Wisconsin, and New York).

Page 1059, *Id.:*

"In the assessemnt of benefits in drainage proceedings, the landowner should not be charged with general benefits which accrue to him as a member of the community, but only with such as are special. The benefits for which an assessment may be made must relate to the betterment of the land for the purpose to which it may reasonably be put, and lands not benefited are not subject to assessment."

Page 1061, *Id.:*

"The general rule is that the expense of construction of a drain cannot be assessed against particular lands to an amount in excess of the benefits received by such land, and as assessment

upon a tract of land in excess of the benefits received is void as to such excess."

In 10 Am. & Eng. Encyc. of Law, 230, it is stated:

"The general rule is well settled that a special assessment for the purpose of drainage can be levied only upon property benefited by the proposed drainage, and the amount of such assessment must not exceed the benefit to be derived by the land assessed."

It was said in the case of *Norwood v. Baker*, 172 U. S. 269, 9 Sup. Ct. 187, 43 L. Ed. 443, by Mr. Justice Harlan, speaking for the court:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

It is suggested that the county commissioners cannot be compelled to build said bridges, for the reason it would be in violation of section 26, art. 10, of the Constitution. This same objection, no doubt, could be urged, and properly so, against the enforcement of the collection of the amount of benefits assessed to the county in the sum of $134,550, yet if said apportionment and assessment are legal, and they appeal to be such, under section 3067, Comp. Laws 1909, it is made the duty of said county to pay said amount of benefits assessed in cash, or in time warrants, as it may elect. We have no authority, and it is not our purpose, to require the county commissioners to attempt to violate the provision of the Constitution, but have the authority to require such commissioners to meet in the manner provided by law and take such proceedings as may be necessary, in compliance with law,

toward the erection of such number of bridges across the drainage ditch in question upon the publc highways as the public good, convenience, and accommodation may require.

It follows that the judgment of the trial court must be reversed, with direction to vacate and set aside same, and to enter a judgment requiring the county commissioners to convene immediately and proceed to take such steps as may be necessary in the manner provided by law, toward letting contracts for the erection of such bridges across Deep Fork Drainage Ditch No. 1, of Lincoln county, as may be necessary to accommodate fully and adeqautely the public, and the court is further directed to proceed in said matter in accordance with the views herein expressed. It is so ordered.

All the Justices concur.